**STATE of Missouri, Plaintiff–Respondent,**

v.

**Helen J. BROWN, Defendant–Appellant.**

**No. 23859.**

Missouri Court of Appeals, Southern District, Division One.

Sept. 18, 2001.

Motion for Rehearing or Transfer to Supreme Court Denied Oct. 9, 2001.

Application for Transfer Denied Nov. 20, 2001.

Emmett D. Queener, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

PARRISH, Presiding Judge.

Helen Juanita Brown (defendant) was convicted following a jury trial of two counts of statutory sodomy in the first degree (Counts I and II), § 566.062.1,[1] two counts of endangering the welfare of a child in the first degree (Counts III and IV), § 568.045.1, and two counts of incest (Counts V and VI), § 568.020.1. This court affirms.[2]

For purposes of its review this court considers the evidence in the light most favorable to the verdicts. *State v. Garrison,* 975 S.W.2d 460 (Mo.App.1998). Contrary evidence is not considered. *Id.*

In 1997 defendant lived in Lebanon, Missouri, with her husband, Clifford

---

1. References to statutes are to RSMo 1994, unless stated otherwise.

2. Defendant was also charged with two counts of sexual misconduct involving a child, § 566.083, RSMo Cum.Supp.1997 (Counts VII and VIII). The state nolle prosequied those charges at the close of all the evidence.

Brown, and her two children, Jessica and Jonathan. Sometime prior to August 1998, Jessica and Jonathan were placed in foster care. On August 8, 1998, Ada Silvey, a licensed clinical social worker, met with the children at their foster home. She had been asked by the Division of Family Services to work with the children. Both children related sexual activities involving their parents. Ms. Silvey reported the information to the "1–800 number in Jeff City where you call in child abuse and neglect complaints." She explained, "[A]s a social worker, I am a mandated reporter, and if a child tells me abuse or an adult tells me something about abuse, I must report it to the hotline." *See* § 210.115.

Ms. Silvey met with Jessica first. Ms. Silvey asked Jessica why she was in foster care. Jessica said she was in foster care because Clifford had been drinking and driving and had done bad things. Jessica described what Clifford had done as "private stuff." Jessica was asked what she meant by "private . stuff." Jessica described sexual acts that defendant and Clifford had done with her and Jonathan. Jessica told Ms. Silvey the things occurred in the living room where they lived; that they would all be naked when the "private stuff" occurred.

Ms. Silvey had dolls with body parts in her car. She got them from the car, laid them on a bed and asked Jessica to show her what had occurred. Jessica took the clothes off the dolls and demonstrated what she had described.

Ms. Silvey talked to Jonathan following her conversation with Jessica. She asked Jonathan why he was in foster care. He told her he was there because of what his dad and mom had done. He used the dolls to show Ms. Silvey what he meant. He took the clothes off all the dolls. Ms. Silvey said he told her "they always had their clothes off when they did this in the living room." He described sexual acts in which his father and mother involved him and Jessica.

A social worker in Laclede County, Tana Nightengale, requested a Lebanon police detective, Richard Wrinkle, to contact defendant and her husband. He was asked to interview them about reports of sexual abuse to their two children. He met with defendant the afternoon of November 24, 1998. Defendant told Detective Wrinkle that she and her husband had engaged in oral sex with her children and that the children would simulate other sexual activity with her husband while they lived in Lebanon. She admitted the daughter was five years old and the son was three years old at the time this occurred.

Another social worker, Susie Strasser, testified. She was called as a witness for defendant. Ms. Strasser interviewed the children August 20, 1998. Both children told her of sexual acts their parents performed with them.

Defendant's first point on appeal contends the trial court erred in admitting hearsay statements of Jessica and Jonathan that were made to Ms. Silvey. Point I argues there was not sufficient indicia of reliability for the out-of-court statements to be admitted in evidence as permitted by § 491.075 because "the statements were inconsistent, were made for the first time about a year after the alleged events and after another child in the home accused [defendant] on the same day of sexual misconduct, and there was no assurance that the statements were not made under inducement or through leading questions."

One of the requirements for preserving an evidentiary issue for appellate review is an objection when the evidence is sought to be introduced at trial. *State v. Nunley*, 992 S.W.2d 892, 894–95 (Mo.App. 1999); *State v. Guidorzi*, 895 S.W.2d 225,

228 (Mo.App.1995). Defendant posed no objection to the reliability of the statements that had been made to Ms. Silvey at the time Ms. Silvey related them at trial. Defendant, therefore, failed to preserve the issue for appellate review.

■ Notwithstanding defendant's failure to preserve the reliability issue for appellate review, this court may examine defendant's claim of error to determine if plain error occurred that resulted in manifest injustice or miscarriage of justice that affected defendant's substantial rights. *State v. Nunley, supra,* at 895; Rule 30.20. Determination of whether plain error occurred is based on the facts and circumstances of the particular case. *State v. Cravens,* 968 S.W.2d 707, 709 (Mo.App. 1998).

■ The state made known its intention to offer the statements about which defendant complains and the particulars of the statements prior to trial as required by § 491.075.3. The trial court conducted a hearing prior to the trial, as required by § 491.075.1, to ascertain the reliability of the statements and make the determinations otherwise required by that statute. A record of that hearing is part of the record on appeal. At the conclusion of the hearing, the trial court entered the finding:

> ... Court finds that Jessie Brown & Jonathan Brown, both children under the age of 12, made statements regarding sexual offenses perpetrated upon

them by deft. The statements were made to Ada Silvey & Susie Strasser. The statements were not recorded nor filmed so all the court has are the statements made by the witnesses as to the content & circumstances of the statements. However, the responses of the children were initiated by the children, were spontaneous, were made w/the use of anatomical dolls w/out leading questions being asked. Therefore, because the stmts were made in July & Aug '98 after alleged incidents from Jan to Sept '97, & considering the content & circumstances of the stmts, the court finds sufficient indicia of reliability to allow the stmts of the children to Ada Silvey & Susie Strassner [sic].

Having reviewed the record of the trial court's hearing, this court finds no manifest injustice or miscarriage of justice; that the admission of the testimony of Ms. Silvey was not plain error.[3] Point I is denied.

Defendant's second point argues the trial court erred in imposing judgment and sentence against defendant for two charges of endangering the welfare of a child (Counts III and IV) and two charges of incest (Counts V and VI) because the "deviate sexual intercourse" element of incest[4] is a specific instance of the general act of "sexual conduct" element of endangering the welfare of a child.[5] Defendant

---

3. Both children testified at trial thereby meeting requirements of § 491.075.1(2)(a).

4. § 568.020, as applicable here, provides:
 1. A person commits the crime of incest if he ... engages in sexual intercourse or deviate sexual intercourse with a person he knows to be, without regard to legitimacy:
 (1) His ancestor or descendant by blood or adoption; or
 . . .
 2. For purposes of this section:
 . . .

 (2) "**Deviate sexual intercourse**" means any act of sexual gratification between persons not lawfully married to one another, involving the genitals of one person and the mouth, tongue or anus of another.
 . . .

5. As applicable here, § 568.045 provides:
 1. A person commits the crime of endangering the welfare of a child in the first degree if:
 . . .

argues that § 556.041(3) precludes defendant from being convicted of both offenses; that the trial court, therefore, erred in imposing judgment and sentence against defendant for both charges with respect to each victim.

Section 556.041(3) states:

*When the same conduct* of a person may establish the commission of more than one offense he may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if

. . .

(3) The offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct;. . . .

(Emphasis added.)

The four offenses were charged as separate counts in a single information as permitted by Rule 23.05. The information alleged that each offense occurred "on or between January 1, 1997, and September 4, 1997."

■ Defendant's contention that two offenses occurred rather than four (the offenses alleged in Counts III and V with respect to Jessica and the offenses alleged in Counts IV and VI with respect to Jonathan) is premised on the hypothecation that there was one instance of criminal conduct with respect to each child; that the one instance was the basis for both convictions with respect to that child. Neither the record on appeal nor the charges set forth in the information support that position.

The four offenses were alleged to have occurred over a 20–month period. There was evidence of more than one occurrence

(2) He knowingly engages in sexual conduct with a person under the age of seventeen years over whom he is a parent, guard-

with respect to each child. Ada Silvey recited statements of Jessica and Jonathan concerning events that would constitute child endangerment, first degree, and incest violative of § 568.045.1 and § 568.020.1. Jessica said these things happened often during that time.

Detective Richard Wrinkle told of his interview with defendant. She admitted having been involved in sexual activity with the children and her husband. She told Detective Wrinkle of acts her husband performed and that "he would also force her to have sexual activity, sodomy with the children." Detective Wrinkle explained what he referred to as "sodomy." He explained, "In this case, sodomy is using the mouth on the genitals or anus of another person."

Detective Wrinkle said defendant admitted "she had also performed cunnilingus on the daughter and fellatio on the boy." He was asked what he meant by "fellatio" and "cunnilingus." He testified, "Fellatio is sucking on the penis of the male." He told the court and jury what he meant by cunnilingus was to "[u]se the mouth and the tongue on the vagina of a female." Defendant admitted to Detective Wrinkle that she had done the activities on two occasions.

There was sufficient evidence for the jury to have found defendant guilty of separate offenses of incest and child endangerment, first degree, with respect to Jessica and separate offenses of incest and child endangerment, first degree, with respect to Jonathan based on separate occurrences regarding each child. Because the conduct occurred at least two times with respect to each child, none of the four offenses of which defendant was convicted

ian, or otherwise charged with the care and custody;

. . .

were based on "the same conduct." Section 556.041 does not apply. Point II is denied.

Point III alleges the trial court erred in refusing Instruction No. A tendered by defendant. The instruction would have permitted the jury to find defendant guilty of child molestation in the first degree, § 566.067, as a lesser-included offense of statutory sodomy.

 "In determining whether the court erred in not giving an instruction on a lesser-included offense, there are two questions to be answered: (1) was the offense a lesser-included offense, and (2) was the evidence such that it was error not to give the instruction." *State v. Barnard,* 972 S.W.2d 462, 465 (Mo.App.1998). The test to determine the first of those questions is, "If the greater of two offenses includes all the legal and factual elements of the lesser, the greater includes the lesser; but if the lesser offense requires the inclusion of some necessary element not so included in the greater offense, the lesser is not necessarily included in the greater." *State v. Neighbors,* 613 S.W.2d 143, 146 (Mo.App.1980). Regardless, a trial court is not required to instruct on a lesser-included offense "unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." § 556.046.2.

Section 566.062.1 provides, "A person commits the crime of statutory sodomy in the first degree if he has deviate sexual intercourse with another person who is less than fourteen years old." "Deviate sexual intercourse" is defined in § 566.010(1) as "any act involving the genitals of one person and the mouth, tongue, or anus of another person or a sexual act

involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person."

Section 566.067.1 describes the conduct that constitutes child molestation in the first degree. It provides, "A person commits the crime of child molestation in the first degree if he subjects another person who is less than twelve years of age to sexual contact."[6] Section 566.010 defines "sexual contact" as "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, for the purpose of arousing or gratifying sexual desire of any person."

The statutory elements of statutory sodomy in the first degree are (1) deviate sexual intercourse (2) with another person who is less than 14 years old. The verdict directors for the charged offenses of statutory sodomy in the first degree required the jury to find defendant guilty of deviate sexual intercourse if it found (1) defendant put her mouth on the genitals of the respective victim; (2) defendant did so with the purpose of arousing or gratifying the sexual desire of any person; and (3) the victim was less than 12 years old.

 The statutory elements of child molestation in the first degree are that a defendant (1) subjects a person who is less than 12 years old (2) to sexual contact. The evidence in this case would have permitted a finding that the offense of child molestation in the first degree was committed. There was evidence that defendant (1) touched each victim's genitals, (2) for the purpose of arousing or gratifying sexual desire, and (3) each victim was less than 12 years old. The evidence would

6. § 566.067.1 was amended by HS HCS SS# 2 SCS SB 757 & 602, 2000 Mo. Laws 725, by adding the words "or she" immediately following the word "he" and substituting "fourteen years" for "twelve years."

have permitted charging defendant with, and finding her guilty of, statutory sodomy in the first degree. It would have permitted charging her with child molestation in the first degree and finding her guilty of that offense.

There was no basis, however, for acquitting defendant of statutory sodomy in the first degree and convicting her of child molestation in the first degree. There was no basis for an acquittal of the greater offense but a conviction for the lesser. The same evidence would support the conviction of either. If it had not supported a conviction for statutory sodomy in the first degree, it would not have supported a conviction for child molestation in the first degree. The prosecuting officials elected to charge and try defendant for the sodomy offense. The trial court did not err by not instructing on child molestation in the first degree as a lesser-included offense under these facts. Point III is denied.

Point IV asserts the trial court erred in not instructing the jury to consider a defense of duress. Defendant argues there was evidence that "she was forced and compelled by her husband to participate in the sexual abuse of the children." She contends the jury, if so instructed, could have found she was not guilty of the offenses charged because her acts were committed under duress.

Defendant submitted proposed Instruction Nos. C through H patterned after MAI–CR3d 310.24. The trial court refused the tendered instructions.

The evidence defendant relies on in support of Point IV is testimony given by Detective Wrinkle on cross-examination. Defendant's trial attorney asked Detective Wrinkle the following questions and Detective Wrinkle gave the following answers:

Q. And you interviewed [defendant] with respect to this case on November 24 of '98. Does that sound right to you?

A. Yes, sir.

. . .

Q. And during that interview then with [defendant], she told you that Clifford abused the children; isn't that right?

A. Yes.

Q. And that Clifford also physically and mentally abused her?

A. I asked her if this was done under coercion from him, and she said it was.

Q. She said it was. In fact, you testified earlier that he forced her to do these acts.[7] Isn't that what she told you?

A. That's correct.

Q. And that they were done at his request?

A. Yes, sir.

Q. Her words were, were they not, that Clifford would have her perform oral sex on both children; isn't that what she told you?

A. I don't know if that's the exact words, but that was the gist of the thing, that she did this at his direction.

---

7. Detective Wrinkle testified on direct examination about what defendant told him. He stated, "There was a point where she denied that she ever had them have sodomy with her, but she had with them; and this was done at her husband's request and that she was doing it because she was coerced by him." Detective Wrinkle was asked what defendant had described as "an average incident." He said, "She said that it would occur like that, he would just be downstairs, something would happen, he'd call them—I believe she used the term 'downstairs'—but anyway, he would call them into the living room, they would all undress, and the children would be directed to perform oral sex on him, he would perform oral sex on them, he would have the children sit on top of him and simulate sexual activity and he would force her to have sexual activity, sodomy with the children."

Q. And it was your understanding then after this interview was conducted, that Clifford would call [defendant] as well as the children into the room, whenever it was, and that he would initiate the acts by doing that; isn't that true?

A. Yes.

Duress is "an affirmative defense that the defendant engaged in the conduct charged to constitute an offense because he was coerced to do so, by the use of, or threatened imminent use of, unlawful physical force upon him or a third person, which force or threatened force a person of reasonable firmness in his situation would have been unable to resist." Section 562.071. The coercion, to constitute a defense, must be present, imminent and impending, and of such a nature as to induce a well grounded apprehension of death or serious bodily injury. *State v. Kelly*, 747 S.W.2d 639, 640 (Mo.App.1988). The threat cannot be of future action, nor can a person who has a reasonable opportunity to avoid the act claim duress as a defense. *Id.*

*State v. Lane*, 834 S.W.2d 242, 244–45 (Mo. App.1992).

■ The evidence in this case did not reflect coercion that would have reasonably induced apprehension of death or serious bodily injury to defendant had she declined to participate in the conduct for which she was charged and found guilty. There was no evidence that defendant lacked a reasonable opportunity to avoid the acts. Point IV is denied.

■ Point V argues that "[t]he trial court plainly erred in not excluding, *sua sponte*, the testimony elicited by the State from Ms. Silvey and Ms. Strasser that nothing in Jessica's or Jonathan's statements raised 'red flags,' or 'suggested that something was false,' or that the statements were 'untrue,' or that 'these children were fabricating' the allegations, ...

in that the statements were direct comments by expert witnesses vouching for the credibility of the alleged child victims and invaded the exclusive province of the jurors to determine credibility."

■ No objections were posed at trial to the segments of testimony about which defendant now complains; neither were allegations of error regarding the evidence included in defendant's motion for new trial. Thus, Point V was not preserved for appellate review. *State v. Guidorzi*, 895 S.W.2d at 228. Defendant obviously recognizes this in that she asserts "[t]he trial court *plainly* erred." (Emphasis added.) This court finds no manifest injustice or miscarriage of justice attributable to the testimony about which defendant now complains. Point V is denied. The judgment is affirmed.

SHRUM and MONTGOMERY, JJ., concur.