STATE of Missouri, Plaintiff–
Respondent

v.

Richard B. HAGAN, Defendant–
Appellant.

No. 25854.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 8, 2004.

Amy Bartholow, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Adriane Dixon Crouse, Asst. Atty. Gen., Jefferson City, for respondent.

JOHN E. PARRISH, Presiding Judge.

Richard B. Hagan (defendant) appeals convictions, following a jury trial, of two counts of promoting child pornography in the first degree. § 573.025.[1] Defendant was charged as, found to be, and sentenced as a prior offender. § 558.016.2, RSMo 2000. This court affirms.

Sixteen-year-old Rachel Snelling lived in Sedalia, Missouri, in May 1999. She was acquainted with defendant. Rachel testified that when she first met defendant, "he made a reference to [her] looks and then [her] age"; that she told him she was 16.

Shortly after Rachel met defendant, she was placed in foster care with Joan and Bill Grose. Rachel went to a friend's house one evening. Defendant was there. Rachel talked to him about where she was living. Defendant told her he knew Bill Grose. Rachel told defendant she wanted to become a dancer. She explained that they talked about it briefly but because she was not 18, little was said. Defendant's girl friend, Melody, was a dancer. Rachel was asked the following questions and gave the following answers:

Q. Was there ever any other time when you talked to [defendant] where there was some discussion with him or in his presence about how old you were?

A. Yes.

Q. What?

A. He told me to make sure that Melody was aware that I was eighteen and not sixteen. Other than that we were not—

Q. Well, I don't understand. He told you to make sure that Melody was aware you were eighteen?

A. (Witness nodded head).

Q. But you weren't eighteen?

A. Right.

Q. Okay, so I don't understand.

A. I was not supposed to let any of the other people around aware of my age.

Q. Okay. So in other words, [defendant] told you to fib about it?

A. Right.

On November 20, 1999, Rachel called defendant and arranged for defendant to meet her at a liquor store. Rachel wanted money. Defendant was to pay her $200. She went with him to his house. She knew she would be "having sex." Defendant told her there would be other men at his residence. Three men were there when Rachel and defendant arrived. They were Damien Kinner, Eric Dotson, and Mike Peoples. Mike Peoples lived next door to defendant. Damien Kinner and Eric Dotson worked for Peoples. Rachel knew Damien Kinner. She did not learn the other two men's names until later.

Rachel had sexual relations with Damien Kinner at defendant's house. Defendant was in the room where this occurred. He videotaped Rachel and Damien's actions. Rachel told the jury defendant asked them to go on, to continue what they were doing. She said defendant was "kind of narrating on the tape." Defendant told her to take off her clothes. She did what he said because she wanted the money.

After Rachel and Damien Kinner had sexual relations, she showered with him. Shortly after that she had sexual relations with all three men who were at defendant's house when she and defendant arrived. Rachel explained that defendant gave instructions to the participants; that defendant "had a camera the whole time." The videotape recordings Rachel described were admitted in evidence.

---

1. References to statutes are to RSMo 1994 unless stated otherwise.

**360**

Defendant presents two points on appeal. The first alleges instructional error at trial. The second asserts trial court error directed to the trial court failing to act when a witness commented on videotape recordings other those admitted in evidence. Point I is directed to Instruction Nos. 5 and 7. The part of Instruction No. 5 to which Point I is directed states:

> As to Count I, if you find and believe from the evidence beyond a reasonable doubt:
>
> First, that on or about November 20, 1999, at a time different from that set out in Instruction Number 7, in the County of Pettis, State of Missouri, the defendant video taped certain material consisting of Rachel Snelling engaged in various acts of sexual intercourse and deviate sexual intercourse with Damien Kinner, and
>
> Second, that such material depicted sexual conduct, and
>
> Third, that such material had as one of its participants a child under the age of 18 years, and
>
> Fourth, that defendant at the time knew of the content and character of the material,
>
> then you will find the defendant guilty under Count I of Promoting Child Pornography First Degree
>
> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

The following terms used in these instructions are defined as follows:

> "Material" means any video tape or video tape production.
>
> "Sexual conduct" means deviate sexual intercourse, sexual intercourse, or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks, or the breast of a female in an act of apparent sexual stimulation or gratification.

. . .

Instruction No. 7 differs from Instruction No. 5 in its paragraph First that provides, "First, that on or about November 20, 1999, at a time different from that set out in Instruction Number 5, in the County of Pettis, State of Missouri, the defendant video taped certain material consisting of Rachel Snelling engaged in various acts of sexual intercourse and deviate sexual intercourse with Damien Kinner, *Eric Dotson, and Mike Peoples*", and in the text of the instruction that immediately follows paragraph Fourth which refers to Count 2 rather than Count 1. (Emphasis added.)

Point I contends the trial court erred in submitting Instruction Nos. 5 and 7 to the jury "in that the instructions did not specifically require the jurors to find that [defendant] knew that a participant on the videotape was under eighteen years of age, thus lowering the State's burden of proof for conviction." The offenses with which defendant was charged and for which he was found guilty occurred on or about November 20, 1999. The statute that denotes the offenses, § 573.025.1, as it existed at that time, provided:

> A person commits the crime of promoting child pornography in the first degree if, knowing its content and character, he photographs, films, videotapes, produces, publishes or otherwise creates child pornography, or knowingly causes another to do so.

Section 573.010(1) defined child pornography as "any material or performance depicting sexual conduct, sexual contact, or a sexual performance as these terms are defined in section 556.061, RSMo, and

which has as one of its participants or portrays as an observer of such conduct, contact, or performance a child under the age of eighteen; provided, that it shall not include material which is not the visual reproduction of a live event[.]"

Section 556.061, RSMo Cum.Supp.1999, defined sexual conduct, sexual contact, and sexual performance as follows:

> **Code definitions.**—In this code, unless the context requires a different definition, the following shall apply:
>
> . . .
>
> (29) **"Sexual conduct"** means acts of human masturbation; deviate sexual intercourse; sexual intercourse; or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks, or the breast of a female in an act of apparent sexual stimulation or gratification;
>
> (30) **"Sexual contact"** means any touching of the genitals or anus of any person, or the breast of any female person, or any such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person;
>
> (31) **"Sexual performance"**, any performance, or part thereof, which includes sexual conduct by a child who is less than seventeen years of age;
>
> . . .

The terms included in Instruction Nos. 5 and 7 are consistent with the statutes applicable at the time the charged offenses were alleged to have been committed. Defendant's complaint, however, does not go to what was included in the text of the instructions, but to the lack of statements that defendant knew a participant on the videotape recordings was under 18 years of age. However, defendant did not object specifically to Instruction No. 5 or Instruction No. 7 at trial. He did not preserve the issue he now asserts in Point I for appellate review. *See* Rule 28.03.

At the instruction conference, the trial judge discussed the instructions the parties had tendered. He told the attorneys he would give 13 instructions; that he had refused two instructions submitted by defendant that were "converse instructions having to do with age." He stated they would be marked Nos. A and B and "[would] be in the court file as refused instructions." The trial judge again reviewed the instructions that would be given. He identified the instructions that would be given to the jury by the numbers he had assigned to them and identified the party who had tendered each instruction. The state had tendered nine of the instructions. Defendant had tendered four.

Defendant's trial attorney was permitted to pose objections. He stated defendant "would object to the instructions in their entirety." He noted that defendant objected to the trial court's refusing the instructions he had tendered and which had been marked Instructions Nos. A and B. He stated with respect to the instructions that were to be given that defendant objected "to all the instructions as a result of the Court not reading those two instructions."

> Rule 28.03  provides, as applicable here:
>
> Counsel shall make specific objections to instructions or verdict forms considered erroneous. No party may assign as error the giving or failure to give instructions or verdict forms unless the party objects thereto before the jury retires to consider its verdict, *stating distinctly the matter objected to and the grounds of the objection. . . .*

(Emphasis added.)

■ The record does not reflect that defendant made specific legal objections at trial to the instructions he questions in this

appeal. The argument defendant now makes was not preserved for review by this court. *See State v. Johnson*, 95 S.W.3d 221, 225 (Mo.App.2003). The instructions have, nevertheless, been reviewed for plain error. In order for there to have been plain error, the jury must have been so misdirected as to cause manifest injustice or miscarriage of justice. *See* Rule 30.20; *State v. Howard*, 896 S.W.2d 471, 482 (Mo.App.1995). Determination of whether plain error was committed is based on consideration of the facts and circumstances of the particular case. *Id.*

One of the findings the jury was required to make in order to find defendant guilty of each charge of promoting child pornography in the first degree was that he at the time knew of the content and character of the material he created. *See* § 573.025.1. The "content" of the material, in order for defendant to have been found guilty, had to include acts of a participant who was under 18 years of age. § 573.010(1). Defendant argues that Instruction Nos. 5 and 7 were erroneous because they "did not specifically require the jurors to find that [defendant] knew that a participant on the videotape was under eighteen years of age."

Defendant's trial attorney argued to the jury that some children were "beyond protection"; that this is especially true with respect to children who lie about their age and about what they are doing. He told the jury, "The third paragraph of both [Instruction Nos. 5 and 7] say, that such material [that was videotaped] has as one of its participants a child under the age of eighteen years; and fourth, that the defendant at the time knew of the content and character of the material." He continued his argument by pointing out to the jury that the defendant was required to know what was on the videotape and who was on the videotape. He contended that Rachel convinced the people she was with, which included defendant, that she was 18 years old. He argued that Rachel should not be believed when she testified she had told defendant she was 16. He continued, "Why should we believe her? And ultimately you're going to have to believe that beyond a reasonable doubt before you can find [defendant] guilty of either count. You're going to have to believe it beyond a reasonable doubt."

The state, in final argument, contested defendant's assertion that Rachel lied about telling defendant she was 16. The prosecutor asked the jury to remember what the evidence was. He argued that the only evidence of Rachel lying about her age was that she told defendant's girlfriend she was 18, and she did that because defendant told her to do so; that defendant told Rachel she could not get the job she wanted unless she told people she was 18.

Based on the facts and circumstances of this case, as gleaned from the record on appeal, this court finds no manifest injustice or miscarriage of justice. Point I is denied.

■ Point II is directed to testimony of Pettis County Deputy Sheriff David Keller. Officer Keller testified that he participated in executing a search warrant at defendant's residence in search of "35mm nude photographs of Rachel and videotapes." He testified that he found "some videotapes that depicted Rachel Snelling." He identified one of the videotapes that was later admitted in evidence as one of the tapes he seized at defendant's residence. He explained he recognized it because he had placed his initials on it and it had a label he had placed on it. Officer Keller testified that he had seized a number of videotapes in the course of executing the search warrant.

He then identified a second videotape that was later admitted in evidence, explaining that it had been seized during the search. The following colloquy then occurred.

Q. [By the prosecuting attorney] Okay. The night that you executed the search warrant, did you view those videotapes?

A. [By Officer Keller] Yes, sir. Well, we viewed enough of them to tell what they were.

Q. These two?

A. These two.

Q. Not the whole thing necessarily?

A. No, no. There were 170 some tapes.

Q. Well, I'm talking about these two.

A. No, sir.

Q. Did you view those?

A. Well, we viewed them enough to determine that they were Rachel and what they were about. We—

Q. All right, did you subsequently view the entire tape?

A. Yes, sir.

Point II asserts that "[t]he trial court plainly erred in failing to intervene *sua sponte* and declare a mistrial after State's witness Officer Keller testified that he seized more than 170 some [video]tapes from [defendant's] home ... in that this testimony was not relevant and its probative value was outweighed by its prejudicial nature since the fact nearly two hundred videotapes had been seized was evidence that [defendant] had been involved in other criminal activity, resulting in a manifest injustice."

 "One of the requirements for preserving an evidentiary issue for appellate review is an objection when the evidence is sought to be introduced at trial." *State v. Brown*, 58 S.W.3d 649, 652 (Mo.

App.2001). No objection was made at trial to the testimony about which defendant now complains. Defendant's complaint in Point II was not preserved for review by this court. *Id.* at 653. Defendant obviously recognizes this in that he contends the trial court "plainly erred" and further argues the testimony resulted "in a manifest injustice." Rule 30.20 permits this court to examine a claim of error, notwithstanding a party's failure to preserve the issue for appeal, to determine if it resulted in manifest injustice or miscarriage of justice that affected a defendant's substantial rights. Whether to grant plain error review lies within the reviewing court's discretion. *State v. Johnson*, 95 S.W.3d at 225 n. 3.

Defendant's claim of plain error does not facially establish substantial grounds for believing that manifest injustice or miscarriage of justice resulted under the facts and circumstances of this case. The request for plain error review is declined. Point II is denied. The judgment is affirmed.

SHRUM and BARNEY, JJ., concur.