**STATE of Missouri, Respondent,**

v.

**Joseph Dwayne COWLES, Appellant.**

**No. 27195.**

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 23, 2006.

Ellen H. Flottman, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., and Daniel N. McPherson, Jefferson City, for respondent.

ROBERT S. BARNEY, Judge.

Joseph Dwayne Cowles ("Appellant") was convicted by a jury of the Class A felony of statutory sodomy in the first degree, a violation of section 566.062, and the Class B felony of child molestation in the first degree, a violation of section 566.067.[1] He was sentenced by the trial court to twenty years imprisonment for statutory sodomy and eight years imprisonment for child molestation with the sentences to run concurrently. Appellant raises three points of trial court error on appeal.

Appellant does not challenge the sufficiency of the evidence supporting his conviction. Viewing the evidence in the light most favorable to the jury's verdict, *State v. Smith*, 185 S.W.3d 747, 751 (Mo.App. 2006), the record reveals Appellant, who was nineteen years old at the time of the charged incidents, became acquainted with nine-year-old T.S. in March or April of 2003 when he began working for T.S.'s mother, R.S., on the family's chicken farm.[2] T.S. testified at trial that she and Appellant were "good friends" who often "talked" and "took walks." She stated that she "like[d] to be around [Appellant]" and that Appellant had been like a big brother to her. A friend of Appellant's stated that Appellant treated T.S. "like a little sister" and R.S. characterized the relationship as a "[b]ig brother/little sister-type relationship."

R.S. testified that in June of 2003 T.S. "started wanting to sleep with [her] every night" and "wanted to hold [her] hand." She stated "it was unusual for [T.S.] to want [R.S.] in there every night, and [T.S.] would hold onto [her] hand so tight [R.S.] couldn't even go to sleep at night." R.S.

---

1. Appellant was charged in the Second Amended Information with statutory rape in the first degree, a violation of section 566.032; however, he was acquitted of that charge at trial by the jury's finding of guilt on the instructed, lesser included offense of child molestation in the first degree. The validity of that instruction is at issue here in Appellant's first point on appeal. Additionally, we note Appellant was charged as a prior felony offender per sections 558.016 and 557.036.4.

All statutory references are to RSMo 2000.

2. To protect the privacy of the victim and her family in this matter, this Court refers to them by their initials.

asked T.S. "if anything was wrong, because she was hanging on so tight . . . [a]nd she kept saying, No, everything's okay, Mom."[3]

In the second week of July, T.S. told R.S. that one of her friends from school, a ten-year-old boy named Jacob, was mad at her because Appellant told Jacob that Appellant was T.S.'s boyfriend. This worried R.S. and she asked T.S. if Appellant had ever "asked [her] to do anything that [she] shouldn't do." T.S. quickly responded "no," and R.S. asked her if Appellant had ever "asked if he c[ould] touch [her] anywhere he shouldn't?" T.S. hesitated for about thirty seconds before saying that Appellant had asked her if he could touch her, but she had told him that he could not. R.S. "was deeply concerned" by T.S.'s statements and she contacted David Wheelock, an investigator for the Division of Family Services, about scheduling an appointment for T.S. at the Child Advocacy Center ("CAC"). An appointment was made at the CAC for the following week.

In the meantime, T.S. informed R.S. that she had "more stuff she wanted to tell [her], but she just couldn't do it yet." T.S. requested to talk to her sister and her sister's boyfriend about it.

At trial, T.S. testified that in June of 2003 she and Appellant were alone in the yard at her cousin's house. T.S. stated that Appellant "told [her] to suck his private" and she "kicked him in his private." She stated that Appellant "fell on the ground" and she "ran home." T.S. testified that after this incident she "was upset at [Appellant]" and was no longer friends with him.

T.S. stated that shortly after the incident at her cousin's house, she was alone with Appellant at her own home. T.S. testified that Appellant "asked [her] to take off [her] clothes." T.S. took her pants off and Appellant "made [her] lay on the couch" in the living room. Appellant then took her underwear off of her. T.S. testified that Appellant took off his clothes and "stuck his private in [her]."[4] T.S. also testified that Appellant touched her vagina with his finger. T.S. testified that she "[t]old him to stop" because it felt "bad," but Appellant did not stop. When Appellant heard R.S.'s car pull up outside, he stopped.

On two other occasions, T.S. was in her bedroom when Appellant "told [her] to take off [her] clothes and he made [her] lay down in the bed." Appellant then took off his clothes and he "started to do the same thing that he did last time." T.S. testified that Appellant again "[s]tuck his private in [her]" and that it felt "[b]ad." She also testified that Appellant touched her vagina with his fingers and that it "hurt." T.S. went on to state that Appellant warned her that if she told anyone about what he was doing to her, he would kill her mother. Also, she testified that she thereafter had trouble sleeping in her room because it was "scary."

Additionally, T.S. testified that one time when she was in a swimming pool with Appellant "[h]e asked [her] to suck his private." When T.S. would not do so, Appellant "said if [she] ever t[old] anyone he's going to kill [her] mom and [her] sister."

Following T.S.'s disclosure and her interview at the CAC, Appellant was interviewed and, thereafter, arrested and charged with statutory rape in the first

---

3. We note that the trial court found that any statements made by T.S. to R.S. were admissible pursuant to section 419.075.1(2)(a).

4. T.S. told the forensic interviewer at the CAC that Appellant touched his penis to her vagina, but that there was no penetration.

degree and statutory sodomy in the first degree. Following trial, as previously stated, Appellant was convicted by a jury of statutory sodomy in the first degree and child molestation in the first degree. He was sentenced by the trial court to twenty years imprisonment for statutory sodomy and eight years imprisonment for child molestation. This appeal followed.

■ In his first point of trial court error, Appellant maintains the trial court plainly erred in instructing the jury on the crime of child molestation in the first degree and in subsequently entering judgment and sentence for that conviction. He argues that child molestation is not a lesser included offense of statutory rape in the first degree; thus, his conviction for child molestation violated his due process rights. The State concedes this point.

■ In our review, we note that due process requires that a defendant may not be convicted of an offense which is not charged in the indictment or information. *State v. Smith*, 592 S.W.2d 165, 165 (Mo. banc 1979). Therefore, a trial court may not instruct on an offense not specifically charged unless it is a lesser included offense. *Id.*

■ Section 556.046.1(1) provides that a lesser included offense "is established by proof of the same or less than all the facts required to establish the commission of the offense charged. . . ." An offense is a less-er included offense if it is impossible to commit the greater without necessarily committing the lesser. *State v. Barnard*, 972 S.W.2d 462, 465 (Mo.App.1998). " 'If the greater of two offenses includes all the legal and factual elements of the lesser, the greater includes the lesser; but if the lesser offense requires the inclusion of some necessary element not so included in the greater offense, the lesser is not necessarily included in the greater.' " *State v. Brown*, 58 S.W.3d 649, 655 (Mo.App.2001) (quoting *State v. Neighbors*, 613 S.W.2d 143, 146 (Mo.App.1980)). This is "often called the statutory elements test; in effect, all of the statutory elements of the proposed lesser included offense must be encompassed by the statutory elements of the greater offense." *State v. Thompson*, 147 S.W.3d 150, 159 n. 3 (Mo.App.2004).

In the present matter, Appellant was charged by Information with statutory rape in the first degree as defined by section 566.032.1.[5] Jury Instruction 7, the verdict director for the charge of statutory rape in the first degree, was presented to the jury without objection. Thereafter, the trial court presented Jury Instruction 11 as "a lesser included offense to the statutory rape in the first degree. It [was] based upon child molestation[6] . . . and [was] submitted by the [S]tate."[7]

The submission of the crime of child molestation to the jury clearly required proof of *additional* facts other than those

5. Section 566.032.1 sets out that "[a] person commits the crime of statutory rape in the first degree if he has sexual intercourse with another person who is less than fourteen years old." "Sexual intercourse" is defined in section 566.010(4) as "any penetration, however slight, of the female sex organ by the male sex organ, whether or not an emission results."

6. Section 566.067.1 states that "[a] person commits the crime of child molestation in the first degree if he or she subjects another per-son who is less than fourteen years of age to sexual contact." "Sexual contact" is defined in section 566.010(3) as "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, for the purpose of arousing or gratifying sexual desire of any person."

7. There was no objection to this instruction by defense counsel and it was read to the jury by the trial court.

required for the proof of the crime of statutory rape. The additional facts required by the crime of child molestation include the touching of various, private parts of the body as well as the latter requirement that the touching be for "the purpose of arousing or gratifying sexual desire of any person." *See* § 566.010(3). However, the touching "for the purpose of arousing or gratifying the sexual desire of any person" is *not* an element of the crime of statutory rape. *See* § 566.032.1 Thus, in the context of the evidence presented at trial, child molestation cannot be considered a lesser included offense of statutory rape, because statutory rape in the first degree does not contain an express mental element, as previously recited.

The present situation is "a classic example of 'manifest injustice' or 'miscarriage of justice' which falls within the perimeters of 'plain error' contemplated by [Rule 30.20]." *State v. Gant*, 586 S.W.2d 755, 762 (Mo. App.1979) (holding that it is "elementary law that an accused cannot be charged with one offense and convicted of another"). Appellant's first point has merit. Therefore, Appellant's conviction for child molestation in the first degree must be reversed and vacated. Point One is granted.

■■■ Appellant's second point on appeal asserts the trial court erred in sustaining the State's objections to his offer of proof and "in precluding [A]ppellant from presenting crucial evidence of his innocence." Specifically, Appellant contends that when T.S. was two or three years old she report-

ed "that her father had pinched her [on her private] and made her bleed." Appellant asserts he should have been permitted to present the foregoing evidence in order to prove "alternative source[s] of knowledge of adult sexual acts."

■■■ " 'Trial courts have broad discretion when it comes to the admission or the exclusion of evidence at trial. An appellate court will not interfere with a trial court's ruling as to the admission or exclusion of evidence absent a clear abuse of discretion.' " *State v. Mathews*, 33 S.W.3d 658, 660 (Mo.App.2000) (quoting *State v. Yahne*, 943 S.W.2d 741, 745 (Mo.App. 1997)). A trial court will be found to have abused its discretion when a ruling is:

'clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable [persons] can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.'

*State v. Brown*, 939 S.W.2d 882, 883–84 (Mo. banc 1997) (quoting *Shirrell v. Missouri Edison Co.*, 535 S.W.2d 446, 448 (Mo. banc 1976)).

The record shows that prior to trial in the present matter, the State filed a motion *in limine* which, in part, sought to exclude testimony relating to issues covered by the Missouri Rape Shield Statute, section 491.015.[8] In its motion, the State

---

**8.** Section 491.015 sets out:
1. In prosecutions under chapter 566, RSMo, or prosecutions related to sexual conduct under chapter 568, RSMo, opinion and reputation evidence of the complaining witness' prior sexual conduct is inadmissible; *evidence of specific instances of the complaining witness' prior sexual conduct or the absence of such instances or conduct*

is inadmissible, except where such specific instances are:
(1) Evidence of the sexual conduct of the complaining witness with the defendant to prove consent where consent is a defense to the alleged crime and the evidence is reasonably contemporaneous with the date of the alleged crime; or

specifically requested Appellant be barred from "suggesti[ng] [T.S.] w[as] sexually abused by someone other that [Appellant]" as well as asking any questions relating to "other sexual activity on the part of [T.S.] in this case." The trial court sustained the State's motion prior to trial.

As previously set out, at trial defense counsel made an offer of proof during R.S.'s testimony regarding what defense counsel termed "prior sexual allegations made by [T.S.]." In the offer of proof, R.S. testified that T.S. had never "made allegations in the past regarding sexual activity," but that she had previously made statements that had concerned R.S. R.S. testified that when T.S. was two or three years old she reported "that her father had pinched her [on her private] and made her bleed."

However, R.S. also stated that she took T.S. "to social services and asked them to question her," but "nothing was found" to substantiate the statements made by T.S. R.S. stated that social services found that T.S.'s "story didn't make any sense ..." and concluded she was probably repeating something she heard at daycare.

Defense counsel argued that the offer of proof would "show prior knowledge of sexual activity ... [and an] alternative explanation for injury...." Defense counsel contended that "[e]vidence of a prosecuting ... witness' prior complaints of rape or assault, as opposed to prior sexual contact, is not rendered inadmissible by [the] rape shield statute."

Following the offer of proof, the State noted that the documentation relating to the Department of Social Services interview with T.S. in 1998 shows that there were no physical injuries to T.S., and that there was no evidence of any abuse by her father established at that time. Accordingly, the State maintained that the offer of proof could not be used as "an alternative source of these injuries when there were no injuries." The trial court refused the offer of proof on the basis that it did not show an alternative source of T.S.'s injury.

Defense counsel then argued that, in the alternative, the offer of proof should be allowed to show "alternative sources of sexual knowledge. Not necessarily injury, but sexual knowledge. And even at the age of three, [T.S.] was acquiring this knowledge." The trial court again refused the offer of proof.

■ It has long been held that "the rape shield statute is designed to protect

(2) Evidence of specific instances of sexual activity showing alternative source or origin of semen, pregnancy or disease;
(3) Evidence of immediate surrounding circumstances of the alleged crime; or
(4) Evidence relating to the previous chastity of the complaining witness in cases, where, by statute, previously chaste character is required to be proved by the prosecution.
2. Evidence of the sexual conduct of the complaining witness offered under this section is admissible to the extent that the court finds the evidence relevant to a material fact or issue.
3. If the defendant proposes to offer evidence of the sexual conduct of the complaining witness under this section, he shall file with the court a written motion accompanied by an offer of proof or make an offer of proof on the record outside the hearing of the jury. The court shall hold an in camera hearing to determine the sufficiency of the offer of proof and may at that hearing hear evidence if the court deems it necessary to determine the sufficiency of the offer of proof. If the court finds any of the evidence offered admissible under this section the court shall make an order stating the scope of the evidence which may be introduced. Objections to any decision of the court under this section may be made by either the prosecution or the defendant in the manner provided by law.

the victim." *State v. Sloan,* 912 S.W.2d 592, 598 (Mo.App.1995).

> Under the rape shield statute, evidence of specific instances of a victim's prior sexual conduct is admissible only if it falls within the specific exceptions set out in [section 491.015] and then only to the extent that the court finds it relevant to a material fact or issue in the case.

*State v. Smith,* 996 S.W.2d 518, 522 (Mo. App.1999). "The statute creates the presumption that evidence of the victim's prior sexual conduct is irrelevant to prosecutions under chapters 566 and 568...." *Id.*

> It is not the province of this [C]ourt to carve out more exceptions than the legislature saw fit to include in the statute. [Section 491.015] should be interpreted as written by the legislature, and it should remain intact absent any violations of a defendant's constitutional right to due process. Clearly, the evidence [Appellant] sought to introduce concerning an alternative source of [T.S.'s] sexual knowledge does not fall within one of the exceptions set forth in the rape shield statute.

*State v. Samuels,* 88 S.W.3d 71, 82 (Mo. App.2002).

Here, the offer of proof contained evidence that T.S. had previously made a statement when she was a toddler regarding possible sexual abuse at the hands of her father. The statement was investigated; T.S. was given a physical examination; and the claim was found to be unsubstantiated. The State also presented documentation from the Department of Social Services which substantiated R.S.'s testimony in the offer of proof. It is our view that this evidence did not establish that T.S. had a prior source of sexual knowledge. The evidence in the offer of proof at hand did not fall within one of the exceptions found in section 491.015 and, thus, it was barred by the rape shield statute. Additionally, the evidence was "not relevant or material to any issue in the case." *State v. Sales,* 58 S.W.3d 554, 559 (Mo.App.2001). The State did not present testimony from any witness to establish that T.S. had an unusual knowledge of sexual matters for her age or that she could only have obtained such knowledge from being abused by Appellant.[9] Indeed, the prosecutor informed the trial court: "I'm not going to get up there and argue that this—there's

---

**9.** Appellant relies on *State v. Douglas,* 797 S.W.2d 532, 535 (Mo.App.1990), for the proposition that his constitutional rights were violated and "the trial court applied the rape shield statute so strictly that it deprived [A]ppellant of his right to a fair trial."

In *Douglas,* the defendant was on trial for the sexual assault, rape, sodomy and child abuse of a fifteen-year-old girl. Id. at 534. The physician who examined the victim testified that the absence of the girl's hymenal tissue "would not be a usual finding on an individual who had not engaged in sexual intercourse" and that such observations were "consistent with penile penetration of the vagina." Id. at 534. The physician's report also revealed the victim informed the physician that "in the last few months she was sexually active with her boyfriend." Id. When defense counsel requested to cross-examine the victim

on the issue of her sexual relationship with her boyfriend, the trial court denied the request on the basis of the rape shield statute. Id. On appeal, the reviewing court concluded that the physician's "testimony of the absence of [the victim's hymen] ... was offered by the State for no other purpose than to support [the victim's] testimony that the defendant had had intercourse with her...." *Douglas,* 797 S.W.2d at 534. Accordingly, the "intended inference was that the absence of the hymen was attributable to defendant's alleged intercourse with her. The defendant was put to an unfair disadvantage when he was not allowed to counter the inference by showing that other sexual activity could have accounted for the absence of the hymen." *Id.* The *Douglas* court stated that the rape shield statute "may not be applied to deny defendant his constitutional rights." *Id.* at 535.

no way this girl would have known about these things but for [Appellant]." Furthermore, no such argument was presented to the jury during the trial. As such, *Douglas* is not persuasive in the present matter and Appellant's reliance on it is misplaced. The trial court did not abuse its discretion in excluding the offer of proof. *Sales*, 58 S.W.3d at 559; *Samuels*, 88 S.W.3d at 83. Point Two is denied.

■ In his third point relied on, Appellant maintains the trial court abused its discretion in sustaining the State's objections to his proffered exhibits B through H. Appellant asserts these exhibits, which were photographs of Appellant's penis, "were relevant to the question of guilt since [T.S.] told the [CAC] examiner that [A]ppellant's penis had brown marks or circles on it, which it did not in the photographs."

T.S. was interviewed by Becky Mahl ("Ms. Mahl") at the CAC on July 14, 2003. Ms. Mahl testified at trial and the transcript of her interview with T.S. was entered into evidence at trial. A portion of the transcript of the 2003 CAC interview states:

Ms. Mahl: [D]o you know what [Appellant's] penis looks like? Do you know what it . . . could you describe it?

T.S.: Do I have to describe it?

Ms. Mahl: Well, it would be helpful. Does it have special marks on it. . . .

T.S.: It has brown.

Ms. Mahl: Has brown? Brown marks like on the end of it?

T.S.: Y[es].

Ms. Mahl: Okay. Are they circles. . . .

T.S.: Circles.

Ms. Mahl: Okay.

During Ms. Maul's trial testimony, defense counsel questioned her regarding the aforementioned portion of her interview with T.S. Following Ms. Mahl's testimony, defense counsel informed the trial court that earlier in the week he had a police officer, Deputy Russell Nichols ("Deputy Nichols"), take photographs of Appellant's penis to show that Appellant did not have "brown" "circles" on his penis. Defense counsel explained that he intended to have Deputy Nichols testify in order to lay a foundation for the introduction into evidence of seven color photographs of Appellant's penis. The State objected on the basis that it found out about the pictures only ten minutes prior to this discussion with the trial court, and also because Deputy Nichols could not lay a foundation that Appellant's penis was "in the same condition it was two years ago. . . ." The trial court sustained the State's objection and ruled that Deputy Nichols did not have sufficient knowledge to testify that Appellant's penis looked the same way at the time of trial as it did two years prior when T.S. observed it. The trial court determined "[t]here's no assurance that that's the way [Appellant's penis] was back in 2003. . . ."

Defense counsel then made the following offer of proof relating to the photographs:

Judge, I anticipate at—in the event that [Appellant] were to testify, I was going to question him about, embarrassingly enough, any marks on his—on his penis to refute what [T.S.] said during her interview. In anticipation, if the Court would not allow me to do that because of the decorum of the proceedings, I had took [sic] some pictures—seven different pictures, as depicted in Defendant's Exhibits # B through # H, which I've kept sealed in an envelope, of different angle of . . . [Appellant's] penis for the purpose of illustrating that now there's no markings, there's no—anything like circle marks, brown marks, whatever, on the end of his—of his penis.

And I was going to have [Deputy] Nichols testify to the fact that he took the pictures and he was going to be able to identify the pictures and the fact that he took them.... And the reason for that evidence, Judge, is to show that, you know, there are no markings now, yeah, two years after the fact, but that would do away with the argument that there were moles, warts, or anything that's permanent.

The State responded by again arguing that defense counsel was incapable of providing the proper foundation for the introduction of the pictures, because "[t]he existence, or lack thereof, of any markings at this time is irrelevant, because the relevant time was two years ago, and we don't have any pictures from that time." The trial court agreed with the State and sustained the State's objection to the offer of proof. In denying the offer of proof, the trial court not only pointed out that defense counsel failed to disclose the pictures to the State until that day, but also stated that Deputy Nichols could not testify that the photographs depicted Appellant's penis as it appeared in May through July of 2003.

 A "trial court is vested with broad discretion in the admission of photographs." *State v. Rousan*, 961 S.W.2d 831, 844 (Mo. banc 1998). The decision of the trial court will not be overturned absent an abuse of discretion. *Mathews*, 33 S.W.3d at 660. " 'The admission of photographs is a discretionary act and will be found erroneous only if the ruling resulted in fundamental prejudice and an abuse of discretion.' " *Smith*, 185 S.W.3d at 756 (quoting *State v. Wilhite*, 858 S.W.2d 293, 295 (Mo. App.1993)).

 A proper foundation must be laid by the proponent of a photograph when attempting to introduce the photograph into evidence. *State v. Powers*, 148 S.W.3d 830, 832 (Mo.App.2004). As such, "[t]he party offering the [photograph] must show that it is an accurate representation of what it purports to show and foundation may be established through the testimony of any witness who is familiar with the subject matter of the [photograph] and competent to testify from personal observation." *Id.* "The determination of whether a proper foundation is established is within the discretion of the trial court." *State v. Manzella*, 128 S.W.3d 602, 609 (Mo.App.2004).

Here, defense counsel sought to have Deputy Nichols testify in order to lay a foundation for the admission of the photographs taken of Appellant's penis a few days before trial. However, defense counsel was not attempting to have the photographs admitted into evidence for the purpose of showing what Appellant's penis looked like near the time of trial. Instead, defense counsel was trying to show that Appellant did not have "brown" "circles" on his penis in 2003, at the time of the posited incidents with T.S.

Here, in order to lay a proper foundation for the photographs, defense counsel would have had to elicit testimony from a witness regarding the appearance of Appellant's penis at the time of his contact with T.S. in 2003. That was not the case here. The trial court correctly found that Deputy Nichols could not testify that the photographs at issue depicted Appellant's penis as it appeared in May through July of 2003; accordingly, there was no foundation for the admission of the photographs as submitted by defense counsel. The trial court did not abuse its discretion in sustaining the State's objection based on lack of foundation. *See Manzella*, 128 S.W.3d at 609. Point Three is denied.

Lastly, we note Appellant was charged in the Second Amended Information as a

prior offender pursuant to sections 558.016 and 557.036.4. Prior to trial, the trial court found that Appellant "is, in fact, a prior offender and as a result, in the event that the jury should find [Appellant] guilty of the charges in [this case], the Court will pronounce sentence in this case and not the jury." At Appellant's sentencing hearing, the trial court sentenced Appellant without mentioning its prior finding that Appellant was a prior offender. Additionally, the written judgment and sentence fails to reflect that finding.

▮ The trial court's authority to determine a criminal defendant's sentence is conferred by sections 558.016 and 557.036.4 upon a finding that, *inter alia,* the defendant is a prior offender. "Once a trial court finds facts beyond a reasonable doubt showing that a defendant has been found guilty of [a prior felony per section 558.016], it has no discretion but to find the defendant to be a [prior] offender." *State v. Jordan,* 947 S.W.2d 95, 97 (Mo. App.1997). "Having made that prior determination, the enhancement provision is automatic, and a trial court is not obligated to repeat at sentencing a previous finding that the defendant was a prior ... offender or even to mention those findings during the sentencing hearing." *Id.*

Here, the trial court made the necessary findings prior to trial and then failed to mention Appellant's prior offender status at the sentencing hearing. However, "[t]he sentencing court's failure to again mention it during the formal pronouncement of sentence is irrelevant." Id.

▮ Also, the trial court failed to write in its judgment and sentence that Appellant was a prior offender. Here, it is apparent that the "failure to memorialize accurately the decision of the trial court as it was announced in open court was clearly a clerical error." *State v. Taylor,* 123 S.W.3d 924, 931 (Mo.App.2004). "Rule 29.12 permits a trial court to correct such clerical errors in the judgment that obviously are a result of oversight or omission." *State v. Booyer,* 87 S.W.3d 926, 931 (Mo.App.2002). Accordingly, we remand this case with instructions to the trial court to enter a written judgment and sentence reflecting Appellant's prior offender status. Also, we reverse and vacate Appellant's conviction and attendant judgment and sentence for child molestation in the first degree. In all other respects, the judgment of the trial court is affirmed.

GARRISON, J., and BATES, C.J., concur.