STATE of Missouri, Plaintiff–
Respondent

v.

Jeffrey D. JENDRO, Defendant–
Appellant.

No. 28461.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 28, 2007.

Margaret M. Johnston, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jayne T. Woods, Asst. Atty. Gen., Jefferson City, for respondent.

JOHN E. PARRISH, Presiding Judge.

Jeffrey Jendro (defendant) was convicted, following a jury trial, of statutory rape

in the first degree (Count I), § 566.032.1,[1] and statutory sodomy in the first degree (Count II), § 566.062. This court affirms.

On the evening of August 3, 2006, defendant asked the 13–year–old victim if she would like to go with him to buy beer. She told him she would. Defendant told her he had told her mother she was going with him. They went to a convenience store where defendant bought beer.

Defendant was employed as a truck driver. After leaving the convenience store, defendant told victim that he had something for her and that he wanted to get cigarettes from the semi truck he drove in his work. When they arrived at the truck, defendant told victim that she needed to climb into the cab of the truck with him. Victim climbed into the cab of the truck. Defendant stepped into the cab immediately behind her. Defendant told her to go into the sleeping area located behind the driver's and passenger's seats. Victim stepped into that area and sat on the edge of the bunk located there. Defendant sat down beside her and pulled a Wal–Mart bag from an overhead compartment of the truck. It contained a pink, sheer, silk nightgown with sequins and matching panties. Defendant told victim to put on the garments. She told him she did not want to. Defendant told her to put them on and he would take pictures of her for her boyfriend. Victim argued, telling defendant she "wasn't like that."

After arguing, victim put on the nightgown and panties over a sports bra and underwear that she was wearing. Defendant attempted to take pictures with a digital camera, but the batteries in the camera were dead. After unsuccessfully trying to take pictures, defendant began touching victim's legs. Victim clenched her legs together, but defendant tried to put his hand under her underwear and eventually touched her vagina with his fingers and "at one point" with his tongue.

Defendant continued using force. Although victim fought defendant's efforts, defendant made her get on her hands and knees and he attempted to penetrate her "bottom" and her vagina. Victim was asked if there was a time defendant made her put her mouth on him and upon answering that he did, she was asked on what part of his body. She replied, "His penis."

Victim told the trial court and jury that she did not know for sure if defendant penetrated her vagina with his penis; that she had never had that kind of experience and did not know whether he was inside her or not. She said, however, that she believed he was.

At some point victim's brother told their mom that she had better look for victim; that victim "had been gone for awhile." Victim's mother went to the truck, got into the truck, and found defendant and victim. Defendant was wearing no clothes when victim's mother found them. Victim was wearing no clothes. Victim was asked the following questions and gave the following answers.

Q. What did you do when you saw your mom?

A. I said, "Thank God," and I was just happy to see her.

Q. Did she take you away from there then?

A. Yes.

Q. And after they took you away from there, after your mama rescued you, what happened next?

A. We went home and she called the police.

---

**1.** References to statutes are to RSMo 2000.

Defendant asserts two points on appeal. Both points are directed to remarks by the state during closing argument. Point I argues that the trial court committed plain error by "failing to *sua sponte* interject during the State's improper closing argument . . . in that the prosecutor excessively argued, over and over, that [defendant] was an 'animal' that needed to be 'caged,' and although [defendant] called himself an 'animal' in a letter he wrote . . . the State's repeated use of that term was inflammatory and prejudicial, and resulted in a manifest injustice and a miscarriage of justice. . . ."

■ Point II accuses the trial court of committing plain error "in failing to intervene *sua sponte* to prevent the State from arguing to the jurors that they should convict [defendant] to prevent him from harming his children in the future, . . . in that the State was asking the jury to convict [defendant] of this offense in order to prevent future acts, which resulted in a manifest injustice and a miscarriage of justice. . . ." Both points on appeal seek plain error review tacitly acknowledging that no objections were posed at trial, and, therefore, that those issues were not preserved for appellate review. *See State v. Guidorzi*, 895 S.W.2d 225, 228 (Mo.App.1995).

Rule 30.20 permits this court to examine a claim of error, notwithstanding a party's failure to preserve the issue for appeal, to determine if it resulted in manifest injustice or miscarriage of justice that affected a defendant's substantial rights. Whether to grant plain error review lies within the reviewing court's discretion.

*State v. Hagan*, 150 S.W.3d 358, 363 (Mo. App.2004).

■ As noted in *State v. Deckard*, 18 S.W.3d 495 (Mo.App.2000):

[A]n assertion of plain error under Rule 30.20 places a much greater burden on a defendant than an assertion of prejudicial error. *See State v. Mitchell*, 975 S.W.2d 191, 199 (Mo.App.1998). A defendant must not only show prejudicial error occurred, but must also show that the error so substantially affected the defendant's rights that a manifest injustice or a miscarriage of justice would inexorably result if the error were to be left uncorrected. *See Id.* [Footnote omitted.]

*Id.* at 497.

■ The issues for which defendant requests plain error review arose in the state's closing argument. "Statements made during closing arguments do not amount to plain error unless they are determined to have had a decisive effect on the jury. To have a decisive effect, there must be a reasonable probability that without what is deemed as improper argument, the verdict would have been different." *State v. Pagano*, 882 S.W.2d 326, 334 (Mo. App.1994) (citations omitted).

In *State v. Silvey*, 894 S.W.2d 662 (Mo.banc 1995), the Supreme Court of Missouri discussed requests for plain error review directed to events occurring during closing arguments. In declining to grant plain error review, the court said:

Plain error review "should be used sparingly and does not justify a review of every trial error that has not been properly preserved for appellate review." *State v. McMillin*, 783 S.W.2d 82, 98 (Mo.banc 1990) (quoting, *State v. Valentine*, 646 S.W.2d 729, 731 (Mo.1983)). Relief should rarely be granted on assertions of plain error as to closing argument because, "in the absence of objection and request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such

intervention." *State v. Clemmons*, 753 S.W.2d 901, 907–08 (Mo.banc 1988). *State v. Wright*, 934 S.W.2d 575, 584–85 (Mo.App.1996).

 The state's comments in closing argument that characterized defendant as "an animal" and addressed the remedy to prevent his children from fearing him alluded to statements defendant made in letters to his wife that were sent while he was in jail awaiting trial in this case. Defendant stated, "I may be an animal and need serious treatment but Im [sic] not a violent rapist." Defendant concluded the letter with the statement, "From the animal in his cage." In another letter defendant stated he would "even sign over [his] parental rights." He added, "And you won't have to worry about hiding the kids from two bad dads." The letters were admitted in evidence.

The prosecuting attorney's remarks in closing argument referred to defendant's letters. His comments included that he agreed with defendant's assessment that he was an animal; and, at the end of the final argument in the guilt phase of the trial, the prosecutor stated, "He's an animal. He says it himself. Let's cage him." The prosecutor also alluded to defendant's children. He stated that there was a remedy that could keep the children "from ever fearing him again."

This court concludes, considering the facts and circumstances of this case based on the complete trial record, that defendant has not demonstrated manifest injustice or miscarriage of justice. Without determining the propriety of the portions of the closing arguments to which Points I and II are directed, this court concludes there is no reasonable probability that without the arguments about which defendant complains the verdicts would have been different; that the arguments had no decisive effect on the outcome of the trial.

*See State v. Pagano, supra*, ("Statements made during closing arguments do not amount to plain error unless they are determined to have had a decisive effect on the jury"), citing *State v. Davis*, 566 S.W.2d 437, 447 (Mo.banc 1978). Points I and II are denied. The judgment of conviction is affirmed.

BATES and SCOTT, JJ., concur.