STATE of Missouri, Plaintiff–
Respondent,

v.

Christopher R. HUGHES,
Defendant–Appellant.

No. 24142.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 18, 2002.

Nancy S. McKerrow, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen L. Kramer, Asst. Atty. Gen., for respondent.

NANCY STEFFEN RAHMEYER, Judge.

Christopher R. Hughes ("Appellant") appeals from his conviction of second-degree murder and armed criminal action in the death of Tracy Joseph Hayes ("Hayes"). We affirm.

On May 1, 1999, Appellant, who was one month away from his eighteenth birthday, and three of his friends were gathered at the home of Robert Ross ("Ross"). They were drinking and playing cards. Ross' mother came home complaining about the way Tracy Hayes, Jr. ("Hayes Jr.") was treating Ross' sister, Melody, at school. Ross' mother suggested that the boys teach Hayes Jr. a lesson. There was conflicting information concerning Appellant's participation in the discussion, but the end result was that Appellant, the three friends, and a fifth person went to the Hayes home. One of Appellant's friends, Dennis Kraus ("Kraus") had just returned from military service and was the oldest of

the group. He indicated that he would be the leader and that they were going just to "talk."

Upon arriving at Hayes' property, the five boys, with Kraus in front, started walking toward Hayes, who was outside working on a lawnmower. When Hayes saw them, he took his shirt off and walked toward the boys. When they met, Kraus was out front with the others fanned out around him. Hayes asked if there was a problem, and Kraus responded that he hoped not and that they were looking for Tracy Hayes.[1] At some point Hayes told him he was Tracy Hayes and to leave his property. Kraus and others testified that Hayes then asked for somebody in the house to get a gun. Hayes then took his hand, put it on the back of Kraus' head and told Kraus he had "messed with the wrong motherf____ now." Kraus looked shaken and the discussion quickly escalated to angry words. The evidence indicates that Hayes told Kraus he was going to kill him.

There is no dispute that Kraus and the other boys began retreating to the car, with Kraus initially backing up to the car. Hayes then kicked Kraus as Kraus turned with his back to Hayes to leave. Kraus indicated that he turned around ready to fight after the first kick, but refrained. After the second kick, Kraus indicated "If you want to do it, let's do it." Hayes charged Kraus and they tumbled down, stopping in a ravine with Hayes on top of Kraus.

It appeared to some of the observers that Hayes was hitting Kraus while he had Kraus pinned to the ground. While the rest of the group was watching what was going on in the ravine, Appellant returned to the car, found a hunting knife, and returned to the scene with it. At the same time, Hayes Jr. was going toward the group carrying a long wooden chair leg. Appellant initially stabbed Hayes in the right shoulder area, a superficial wound that would not have killed him. A second stab that sliced the lower left back was the fatal wound. Hayes Jr. testified that he hit Appellant with the chair leg several times in the head as soon as he saw the first knife wound. Appellant did have a concussion, was incoherent and claims not to remember anything concerning the second wound. Hayes Jr. testified that the second wound occurred when Hayes was on his back, Kraus was on top of him, and Appellant was reaching around to stab Hayes. There was no further testimony regarding the infliction of the second wound; however, Appellant maintained control of the knife until his friends took the knife from him and took him from the scene.

Appellant's two points on appeal both claim error with Instructions 17 and 18, which were modeled after MAI–CR3d 306.06 and 306.08. MAI–CR3d 306.06 concerns justification of the use of force in situations of self-defense and MAI–CR3d 306.08 concerns justification of the use of force in defense of third persons. In his first point on appeal Appellant contends that Instructions 17 and 18 misstated the evidence and took away from the jury the issue whether Kraus in Instruction 17 or Appellant in Instruction 18 instigated the fight that caused Hayes' death in that the instructions included language regarding the "initial aggressor." Although Instruction number 17 was based on MAI–CR 3d 306.08 and Instruction number 18 was based on MAI–CR 3d 306.06; Appellant claims the instructions were not in conformity with MAI–CR 3d and the accompanying Notes on Use, nor were they supported by the evidence.

1. Kraus was referring to Hayes Jr.

■ Generally, § 563.031.1[2] allows a person to use physical force upon another person to defend himself or a third person from what he perceives to be the use or imminent use of unlawful force by the other person. This defense is not available, however, if the defendant was the initial aggressor, unless he withdrew from the conflict § 563.031.1(1)(a). An initial aggressor is one who first attacks or threatens to attack another. *Denson v. State*, 31 S.W.3d 166, 179 (Mo.App. W.D. 2000); MAI–CR3d 306.06, Part A[1]. If there is contradictory evidence as to who was the initial aggressor, it is a question of fact for the jury to decide. *Denson*, 31 S.W.3d at 180.

■ Deviation from an applicable MAI instruction or its Notes on Use is presumptively prejudicial unless the contrary is clearly demonstrated. *State v. Presley*, 694 S.W.2d 867, 872 (Mo.App. S.D.1985). In reviewing the adequacy of jury instructions, this court determines whether sufficient evidence existed for that instruction, viewing all facts and inferences in the light most favorable to the state, and ignoring all adverse inferences. *State v. Abdul-Khaliq*, 39 S.W.3d 880, 883–84 (Mo.App. W.D.2001). A jury instruction constitutes reversible error only when there was error in submitting the instruction and that error prejudiced the defendant. *Id.* at 884. The failure to give an instruction as stated in an applicable MAI CR instruction constitutes error, and the prejudicial effect must be determined. Rule 28.02(f).[3]

We will discuss Instruction 17, which involves justification of use of force in de-fense of third persons.[4] MAI–CR3d 306.08, concerning the justification of the use of force in the defense of third persons, states:

A person can lawfully use force to protect another person against an attack unless, under the circumstances as he reasonably believes them to be, the person he seeks to protect would not be justified in using such force to protect himself. [*Insert brief description of the basis whereby the person being protected would not be justified in using force to protect himself. See Notes on Use 3(b) for examples.*] If, under the circumstances as a person reasonably believed them to be, the person he seeks to protect (was the initial aggressor (and had not withdrawn)) (was being arrested by a law enforcement officer) ( [*other basis for lack of justification* ] ), then he is not entitled to use force to protect the other person.

The instructions on use indicate that the above paragraph is to be used "ONLY if there is evidence that the person being defended was not justified in using force in self-defense and that such was apparent to the defendant." Instruction 17 included the additional language, "A person who is an initial aggressor, that is, one who first attacks or threatens to attack another is not justified in using force to protect himself from the counter-attack that he provoked." The instruction, thus, did not give the option to the jury to find that the initial aggressor "had not withdrawn." Further, the instruction continued,

If, under the circumstances as the defendant reasonably believed them to be,

---

**2.** All references to statutes are to RSMo 2000, unless otherwise indicated.

**3.** All rule references are to Supreme Court Rules (2002), unless otherwise stated.

**4.** Appellant raises identical issues regarding Instruction 18. Because the evidence is minimal that Appellant was justified in use of any force in his own defense, we will concentrate our discussion of the justification for the use of force in defense of a third person.

Dennis Kraus was not the initial aggressor in the encounter with Tracy Joseph Hayes and if the defendant reasonably believed Dennis Kraus was in imminent danger of death or serious physically injury from the acts of Tracy Joseph Hayes and he reasonably believed that the use of deadly force was necessary to defend Dennis Kraus, then he acted in lawful defense of another person.

Again, there was no option for the jury to determine that Kraus had indicated to Hayes his withdrawal from the encounter. The Notes on Use indicate that if there is further evidence the person being protected withdrew so as to regain the privilege of using force, then a sentence setting those facts should be added.

■■■ Appellant's point on appeal only claims there was no evidence that Kraus or Appellant was the initial aggressor.[5] The point of error addressed by Appellant is related to evidence of who was the initial aggressor, and not to whether there was any withdrawal from the conflict. Review on appeal is limited to the issues framed by the Appellant's point relied on. *Helmig v. State*, 42 S.W.3d 658, 666 (Mo.App. E.D. 2001); Rule 84.04(e).

Although there was evidence supporting an inference that Kraus and his friends withdrew from the conflict or that Hayes was the initial aggressor,[6] there was also ample evidence supporting a theory that Appellant or Kraus was the initial aggressor. A group of five boys descending upon Hayes' private property could be a basis for believing any member of the group, or the group as a whole, was the initial aggressor of the events that later occurred. There was evidence that the boys were looking for a fight. One witness described the boys prior to going to the property as "feisty." The group went to the school earlier that day looking for another boy to either talk out a problem or fight. Hayes Jr. had heard that there were boys looking for him because he had pushed Melody down the hallway. Melody had shouted an obscenity at Hayes and his family the day before, and Hayes confronted her about it that evening. In addition, there was some evidence that Hayes Jr. and Appellant almost got into a fight at a basketball game in the past. Kraus testified at trial that he realizes that with the history of problems between Hayes Jr. and the boys, five boys walking onto Hayes' property might upset him.

Hayes Jr. testified that while his father was calm, Kraus was arrogant, cocky, loud, and obnoxious. There was testimony that

**5.** Appellant's Point I reads:

The trial court erred in giving Instructions # 17, and # 18, the instructions on defense of another and self-defense because those instructions were not in conformity with MAI CR3d 306.08 and 306.06 and thereby deprived [Appellant] of due process, a properly instructed jury and a fair trial, as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, §§ 10 and 18(a) of the Missouri Constitution, as well as Rule 28.02, in that there was no evidence that Dennis Kraus or [Appellant] were the initial aggressors. [Appellant] was prejudiced by the giving of Instructions # 17 and # 18 because they misstated the evidence and made it appear that

the Court believed, in giving these instructions to the jury, that Dennis or [Appellant] may have instigated the fight that resulted in Hayes' death and therefore [Appellant] was not justified in using force against Hayes to defend Dennis or himself which thereby undermined [Appellant's] defense.

**6.** Hayes took off his shirt, threw it to the ground, approached Kraus, made the initial threat to Kraus, and threatened to kill him. At this point Kraus and his group retreated. Hayes kicked Kraus twice as Kraus was leaving the property, tackled him and had him pinned to the ground as he was hitting him. There was also evidence that Hayes had asked someone to bring him a gun.

Kraus told Hayes that he would "kick his ass," although there was conflicting testimony as to at what point in the altercation Kraus first made this statement. Thus, the evidence would have supported a jury believing that the boys' advance onto Hayes' property was the initial aggressive act that led to Hayes' death. *See, e.g., State v. White,* 738 S.W.2d 590, 593 (Mo. App. E.D.1987)(finding that evidence that without provocation a person and his friends advance on another person in a threatening manner could support finding the first person to be the initial aggressor). Although Instruction No. 17[7] did not give the jury the option of deciding that Kraus or Appellant had "clearly indicated to Tracy Joseph Hayes his withdrawal from the encounter," the issue of withdrawal from the conflict was not raised by Appellant. Point I is denied.[8]

■ In Appellant's second point on appeal he claims two more errors with Instructions 17 and 18 concerning the use of deadly force and Appellant's reputation for being violent. Neither of these claims of error were properly preserved at the trial court level in that Appellant did not raise these specific objections to the instructions, and, recognizing that fact, Appellant requests plain error review. For instructional error to constitute plain error, "the trial court must have so misdirected or failed to instruct the jury such that the error affected the jury's verdict, resulting in manifest injustice or miscarriage of justice." *Morrow,* 41 S.W.3d at 58–59. Review of instructions for plain error is discretionary and for Appellant to be entitled to plain error review the claim must facially establish substantial grounds for believing that manifest injustice occurred. *State v. Lewis,* 955 S.W.2d 563, 566 (Mo.App. W.D.1997).

■ Appellant contends that there was instructional error in the inclusion of a statement as to Appellant's reputation for being violent. Appellant's contention is based on his belief that "[t]here was no evidence at trial of [Appellant's] reputation for violence and turbulence...." This contention is contrary to the evidence that indicated Appellant was a violent person. For example, Appellant testified that he pled guilty to assault in March 1999 and received probation. Kraus testified that Appellant would not shy away from fights and had been involved in physical confrontations. Hayes Jr. testified that he almost got into a fight with Appellant at a basketball game. Charlie Daniels, one of the boys who went to Hayes' home on May 1 with Appellant, testified that he was aware that Appellant had been in fights before. Because it does not facially appear that Appellant's claim of error has any basis, plain error review of the point is not warranted.

■ Next, Appellant addresses language in the jury instructions that Appellant used deadly force. The portion of Instruction 17 of which Appellant complains states:

[I]f the defendant reasonably believed Dennis Kraus was in imminent danger

---

7. For some reason, one part of Instruction 18 on the issue of self-defense did not give the jury the option of finding that "the defendant clearly indicated to Tracy Joseph Hayes his withdrawal from the encounter." In another section of Instruction 18, the jury was given the option of determining that Appellant had withdrawn from the conflict by stating, "If the defendant was not the initial aggressor in the encounter with Tracy Joseph Hayes, or if he was the initial aggressor and clearly indicated to Tracy Joseph Hayes his withdrawal from the encounter...."

8. The same facts under which Instruction 17 was appropriate regarding Appellant being the "initial aggressor" result in Instruction 18 being appropriate as well.

of death or serious physical injury from the acts of Tracy Joseph Hayes and he reasonably believed that the use of deadly force was necessary to defend Dennis Kraus, then he acted in lawful defense of another person.[9]

The instructions must be compared to MAI–CR3d 306.06 and MAI–CR3d 306.08.

The specific instruction for MAI–CR3d 306.06 states that the language should be used only when the evidence is clear that the defendant used deadly force and there is no dispute as to that issue.[10] Deadly force is defined as "physical force which the actor uses with the purpose of causing or which he knows to create a substantial risk of causing death or serious physical injury." § 563.011(1). Appellant's intent to cause death or serious injury is essential. MAI–CR3d 306.06, Notes on Use 4(b). "If the defendant did not have as his purpose the causing of death or serious physical injury and was not aware that such injuries were likely, he has not used 'deadly force.'" Id. "Serious physical injury" is defined as "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body[.]" § 565.002(6).

Appellant argues that he did not intend to use deadly force based on the following testimony where he discussed the upper stab wound:

Q   Why did you stick the knife in [Hayes'] shoulder?

A   Because it wasn't an area that is vital, it wasn't I knew he wouldn't get a serious injury out of it.  If anything, I was trying to demobilize him for long enough to get my friend out from underneath him and get back to the Jeep.

Earlier in his testimony Appellant testified, "And I knew it wasn't nothing fatal, nothing serious...." The state responds that this testimony is irrelevant because it concerned the upper, non-fatal stab wound, not the lower, fatal wound.  Appellant's position as to the fatal wound was that he did not remember making that wound, and so he must not have done it.  He testified that he thought he only stabbed Hayes once and he assumed that the second wound was an accident.

In reviewing this evidence as it relates to Instruction 17 the evidence must be viewed in the light most favorable to the theory advanced by Appellant, with all reasonable inferences being made therefrom and keeping in mind that he is entitled to an instruction on any theory which the evidence tends to establish. *State v. Jones*, 921 S.W.2d 154, 155 (Mo.App. E.D. 1996).  With that standard being applicable, it would be reasonable to infer that Appellant was saying he did not intend to stab Hayes the second time.  Appellant contends the instruction should have contained language to give the jury the option of deciding that Appellant used non-deadly force.  Appellant's argument is misplaced.

---

**9.**  The portion of Instruction 18 of which Appellant complains states as follows:
[I]f the defendant reasonably believed he was in imminent danger of death of serious physical injury from the acts of Tracy Joseph Hayes and he reasonably believe[d] that the use of deadly force was necessary to defend himself, then he acted in lawful self-defense.
Again, the analysis concerning deadly force is the same for both instructions, and in effort toward brevity, we will specifically discuss Instruction 17.

**10.**  MAI–CR3d 306.08 refers to MAI–CR3d 306.06 for an explanation regarding deadly force under that instruction; therefore, the discussion of deadly force under MAI–CR3d 306.06 is equally applicable to MAI–CR3d 306.08.  MAI–CR3d 306.06, Part B[2][B]; MAI–CR3d 306.08, Part B[2][B].

Regardless of whether Appellant remembers or witnesses recall the second stab wound, the issue of whether Appellant inflicted the second, fatal stab wound was resolved by the jury in Instruction No. 7, when the jury found that "the defendant caused the death of Tracy Joseph Hayes by stabbing him." As to Appellant's intent to cause deadly force, the evidence was undisputed that Appellant left the area of the confrontation with the purpose of finding a weapon in his friend's jeep. He then put the knife in the waistline of his shorts, returned to the scene and stabbed an unarmed man in the back with such force to cause a wound six inches in length, which subsequently killed the man. Deadly force was used and it was not error for the court to so instruct that deadly force was used. There was no error, plain or otherwise. Point II is denied.

Judgment affirmed.

GARRISON, P.J., and PARRISH, J., concur.