STATE of Missouri, Plaintiff–
Respondent

v.

Phineas John GOLDEN, Defendant–
Appellant.

No. 27754.

Missouri Court of Appeals,
Southern District,
Division One.

May 3, 2007.

or she subjects another person who is less than fourteen years of age to sexual contact.

2. Child molestation in the first degree is a class B felony unless the actor has previously been convicted of an offense under this chapter or in the course thereof the actor inflicts serious physical injury, displays a deadly weapon or deadly instrument in a threatening manner, or the offense is committed as part of a ritual or ceremony, in which the crime is a class A felony.

Section 566.010(3) defines sexual contact as "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person."

Defendant lived with J.L.S. and J.L.S.'s mother at several different locations beginning sometime in the year 2000. They lived for short times in New York and in Arkansas. Most of the time, however, they lived in Missouri. J.L.S. told her mother that defendant had touched her "private area" on different occasions. After returning to Missouri, J.L.S. attended Summersville Elementary School. A counselor at the school received information that caused her to make a hotline call.

Sue Richard, an employee of the Missouri Children's Division, responded to the hotline call. J.L.S. told Ms. Richard that defendant "had been beating on [J.L.S.'s] mom frequently." Ms. Richard asked if J.L.S. was having other problems at home. She said she was. She said defendant had been touching her between the legs. Ms. Richard picked up J.L.S.'s mother then returned to school to get J.L.S. They went to the sheriff's office at the Texas County Courthouse, after which they made a vid-

Ellen H. Flottman, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Lisa M. Kennedy, Asst. Atty. Gen., Jefferson City, for respondent.

JOHN E. PARRISH, Judge.

Phineas Golden (defendant) appeals his conviction of child molestation in the first degree. § 566.067.[1] This court affirms.

Defendant was charged with committing child molestation in the first degree between the dates of June 1, 2003, and October 31, 2003, by subjecting J.L.S., a nine-year-old female, to sexual contact. At the time of the charged offense, § 566.067 stated:

1. A person commits the crime of child molestation in the first degree if he

---

1. References to statutes are to RSMo 2000.

eotape recording of Ms. Richard's interview with J.L.S.

At trial J.L.S. told of the conversation she had with Ms. Richard. She was asked about what happened at her house in Summersville. J.L.S. said defendant would touch her with his hand; that sometimes she had clothes on and sometimes she did not. J.L.S. was asked where he touched her. She said he touched her private. She indicated the area of her body she meant. The record reflects that she referred to her genital area.

J.L.S. was asked if defendant asked her to touch him. She said he did; that he asked her to touch "[h]is private." She said defendant had her touch him with her hand. She was asked what else defendant tried to get her to do. She answered, "He made me suck."

J.L.S.'s mother testified that she and defendant had lived together for almost four years as "boyfriend/girlfriend." She told of various places they had lived and that J.L.S. had told of defendant touching her a number of times. She said when she would confront defendant about what J.L.S. told her, he denied that he touched J.L.S. During the state's questioning, she was asked what her romantic relationship with defendant was like during the four years they lived together. Following an objection for relevancy, the trial court permitted the inquiry. The prosecuting attorney then asked what J.L.S.'s mother's sexual relationship with defendant was during the time they lived together. She answered that they did not have one; that she never had sexual relations with defendant during the time she lived with him. She said the reason was that defendant did not want to have intercourse. Defendant's sole point on appeal is directed to that inquiry.

Defendant argues that the trial court erred in denying the objection to J.L.S.'s mother's testimony about her lack of a sexual relationship with defendant because "any probative value which this evidence may have had to shed light on any material issue was clearly outweighed by its prejudicial impact since the implication was created that [defendant] did not have sex with [the mother] since he was having sex with the child." Defendant argues the trial court committed plain error in its ruling; that "[t]his error rises to the level of a manifest injustice and miscarriage of justice and requires a new and fair trial."

■■■■ "In order to preserve an evidentiary issue in a jury trial for appellate review, an objection must be made when the evidence is sought to be introduced; that objection must be asserted as error in a motion for new trial; and the issue must be presented in the appeal brief." *State v. Guidorzi,* 895 S.W.2d 225, 228 (Mo.App. 1995). The testimony in question was objected to at trial; however, it was not asserted as error in defendant's motion for new trial. Thus, it was not preserved for this court's review. Defendant recognized this deficiency in that his point relied on contends "[t]he trial court plainly erred," and that the error resulted in manifest injustice and miscarriage of justice.

> Rule 30.20 permits this court to examine a claim of error, notwithstanding a party's failure to preserve the issue for appeal, to determine if it resulted in manifest injustice or miscarriage of justice that affected a defendant's substantial rights. Whether to grant plain error review lies within the reviewing court's discretion.

*State v. Hagan,* 150 S.W.3d 358, 363 (Mo. App.2004).

■■■■ "There is no exact formula for determining whether plain error has occurred. 'Consequently, it has been judicially recognized that the existence or non-

existence of "plain error" must be coped with on a case to case basis and rebalanced each time against the particular facts and circumstances of each case.' " *State v. Frankenberg,* 876 S.W.2d 286, 288 (Mo. App.1994), *quoting State v. Miller,* 604 S.W.2d 702, 706 (Mo.App.1980).

> The extent of appellate review authorized by [Rule 30.20] is limited in two important respects. First, an appellate court is not required to engage in plain error review; the decision whether to grant or deny such a request is left to the court's discretion. *State v. Thurston,* 104 S.W.3d 839, 841 (Mo.App. 2003); *State v. Smith,* 33 S.W.3d 648, 652 (Mo.App.2000). Second, as this Court observed in *State v. Deckard,* 18 S.W.3d 495 (Mo.App.2000):

> > We initially observe that an assertion of plain error under Rule 30.20 places a much greater burden on a defendant than an assertion of prejudicial error. A defendant must not only show prejudicial error occurred, but must also show that the error so substantially affected the defendant's rights that a manifest injustice or a miscarriage of justice would inexorably result if the error were to be left uncorrected.

> (Citations and footnotes omitted.) *Id.* at 497. The burden of proving the existence of such a manifest injustice or miscarriage of justice rests on Defendant. *State v. Cole,* 844 S.W.2d 493, 500 (Mo.App.1992); *State v. Lewis,* 809 S.W.2d 878, 879 (Mo.App.1991).... In this direct appeal setting, we are mindful that plain error cannot serve as a basis for granting the Defendant a new trial, as he requests, unless the error was "outcome determinative." *Deck v. State,* 68 S.W.3d 418, 427 (Mo.banc 2002); *State v. Armentrout,* 8 S.W.3d 99, 110 (Mo.banc 1999). In the absence of an error of this magnitude, no manifest injustice or miscarriage of justice exists.

*State v. Campbell,* 122 S.W.3d 736, 740 (Mo.App.2004).

■ Plain error review consists of a two-step analysis: determination of whether the asserted claim of plain error facially establishes substantial grounds for believing a manifest injustice or miscarriage of justice occurred; and, if so, determination of whether manifest injustice or miscarriage of justice actually occurred. *Id.* "If facially substantial grounds are not found to exist, the appellate court should decline to exercise its discretion to review the claim of plain error pursuant to Rule 30.20." *Id.*

■ This court does not find the claim of error defendant asserts facially establishes substantial grounds for believing manifest injustice or miscarriage of justice occurred in the trial of this case. As the state points out in its respondent's brief, defendant sought to use the testimony about which he now complains to his advantage in closing argument. His trial attorney inferred that defendant's not having had a sexual relationship with the victim's mother, who remained married to another man throughout the time she lived with defendant, was an act of virtue. Having chosen to speak of defendant's forbearance from having sexual intercourse as a favorable trait, this court does not perceive the same evidence that elicited those remarks affords defendant a basis for complaining that the trial court committed plain error in allowing the testimony. Not finding substantial grounds for believing manifest injustice or miscarriage of justice occurred, this court declines plain error review. Defendant's point is denied. The

judgment is affirmed.[2]

RAHMEYER, P.J., and SCOTT, J., concur.

---

**2.** The transcript filed as part of the record on appeal includes the text of written instructions that were read to the jury. Written instructions, being portions of the trial record

---

previously reduced to written form, should not be part of the transcript in that they may be included in the legal file component of a record on appeal. *See* Rule 81.12.