**STATE of Missouri, Plaintiff–Respondent**

v.

**Michael BURNS, Defendant–Appellant.**

**No. SD 29263.**

Missouri Court of Appeals, Southern District, Division Two.

Aug. 20, 2009.

Kent Denzel, Asst. Public Defender, Columbia, MO, for Appellant.

Chris Koster, Atty. Gen., Terrence M. Messonnier, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

JOHN E. PARRISH, Judge.

Michael Burns (defendant) was convicted of murder in the first degree, § 565.020.1,[1] and armed criminal action, 571.015.1. This court affirms.

On the morning of October 1, 2005, defendant was at the residence of Angela Gentry. Ms. Gentry resided in a trailer located on Highway 13 in northern Greene County, Missouri. At some point that morning, Gentry saw Robert Leiker's vehicle approaching. Gentry had been, or at that time was, involved in romantic relationships with both Leiker and defendant. She told defendant to leave. Defendant went out the door into Gentry's backyard.

Jeana Lee Williams, a friend of Ms. Gentry, was at the Gentry residence. She had spent the night there. According to Williams, Leiker was angry when he arrived. He and Gentry argued. Defendant, still in Gentry's backyard, yelled to Leiker, "If you touch her, I'll kill you."

According to Williams, Leiker went to his vehicle, retrieved a handgun, and fired two shots toward the backyard. She said that Leiker then got into his vehicle, fired three shots over his left shoulder, and proceeded in his vehicle down the driveway of Ms. Gentry's residence.

As Leiker's vehicle headed out of the driveway, it suddenly began to back up, circled into a ditch and went airborne. Leiker was ejected. The vehicle stopped

---

1. References to statutes are to RSMo 2000.

in the middle of Highway 13 in front of Gentry's residence. Leiker was lying on the roadway in front of the vehicle. He had a gunshot wound to his back. An autopsy revealed the wound was from a shotgun pellet. The pellet had entered his "back left midline." It was found on the "center midline" of his chest. The autopsy revealed that the pellet had struck Leiker's left lung and his aorta. Leiker died as a result of the damage to his aorta.

A handgun was found in the front seat of Leiker's vehicle. There was no ammunition in it. Searches of the crime scene did not reveal shells for the handgun or casings from rounds fired from the handgun.

Neighbors of Ms. Gentry reported hearing three or four gunshots. There was testimony that all of the shots fired sounded as if they were fired from the same gun. One neighbor, Linda Waggoner, said that after she heard three shots fired, she looked toward Ms. Gentry's trailer and saw a man at the side of the trailer. She said the man was pointing what she described as a rifle toward the highway; that he fired the weapon once as she watched. She saw the man go into Ms. Gentry's trailer. Later, she saw him run into the woods behind the trailer.

Ms. Williams said that defendant came inside the trailer after the shooting stopped; that he was holding what she described as a rifle. Defendant got his car keys and left. Sometime later, a Mossberg 12–gauge pump-action shotgun was found in the wooded area behind Ms. Gentry's trailer. Defendant signed a statement that he had obtained a Mossberg 12–gauge shotgun several days before October 1, 2005, and hid it in a bush.

Ms. Williams and Ms. Gentry left in Gentry's vehicle. As they were leaving, Gentry stopped in the highway, got out of her vehicle, and "checked" on Leiker. She got back inside the vehicle and they left.

Three shotgun shells were recovered during a later search of the area near Ms. Gentry's residence. Testing revealed that the shells had been fired from the shotgun that was found in the woods. The pellet that was recovered from Leiker's chest was consistent with the type of pellets found in the recovered shells.

■ Defendant's first point on appeal is directed to a jury instruction given at trial. Point I contends the trial court erred in giving Instruction No. 14 to the jury; that it was error to include the "initial aggressor language" in the instruction.

Instruction No. 14 with the language about which defendant complains, the "initial aggressor language," italicized, states:

One of the issues in this case is whether the use of force by the defendant against Robert Leiker was in self-defense. In this state, the use of force including the use of deadly force to protect oneself from harm is lawful in certain situations.

*A person can lawfully use force to protect himself against an unlawful attack. However, an initial aggressor, that is, one who first attacks or threatens to attack another, is not justified in using force to protect himself from the counter-attack that he provoked.*

In order for a person lawfully to use force in self-defense, he must reasonably believe he is in imminent danger of harm from the other person. He need not be in actual danger but he must have a reasonable belief that he is in such danger.

If he has such a belief, he is then permitted to use that amount of force that he reasonably believes to be necessary to protect himself. But a person is not permitted to use deadly force, that

is, force that he knows will create a substantial risk of causing death or serious physical injury, unless he reasonably believes he is in imminent danger of death or serious physical injury. And, even then, a person may use deadly force only if he reasonably believes the use of such force is necessary to protect himself.

As used in this instruction, the term "reasonable belief" means a belief based on reasonable grounds, that is, grounds that could lead a reasonable person in the same situation to the same belief. This depends upon how the facts reasonably appeared. It does not depend upon whether the belief turned out to be true or false.

On the issue of self-defense, you are instructed as follows:

*If the defendant was not the initial aggressor in the encounter with Robert Leiker,* and if the defendant reasonably believed he was in imminent danger of death or serious physical injury from the acts of Robert Leiker and he reasonably believed that the use of deadly force was necessary to defend himself, then he acted in lawful self-defense.

The state has the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense. Unless you find beyond a reasonable doubt that the defendant did not act in lawful self-defense, you must find him not guilty.

As used in this instruction, the term "serious physical injury" means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body.

Evidence has been introduced of threats made by Robert Leiker against defendant and evidence of threats made by defendant against Robert Leiker. You may consider this evidence in determining who was the initial aggressor in the encounter.

Instruction No. 14 is derived from MAI–CR 3d 306.06. Note on Use 4(a) to that instruction states that the "initial aggressor language" should not be used "[i]f there is no evidence indicating the defendant was the initial aggressor or provoked the incident...." Defendant contends that this admonition applied to his case; that the evidence was that Leiker, not defendant, was the initial aggressor. He argues that, therefore, the trial court erred in giving Instruction No. 14; that the instruction should not have included the "initial aggressor language." [2]

▮ "In reviewing the adequacy of jury instructions, this court determines whether sufficient evidence existed for that instruction, viewing all facts and inferences in the light most favorable to the state, and ignoring all adverse inferences." *State v. Hughes,* 84 S.W.3d 176, 179 (Mo. App.2002). "The state need not present undisputed evidence that defendant was an initial aggressor in order to submit the issue to the jury. Conflicting evidence as to who was the initial aggressor presents an issue of fact for the jury to decide." *State v. Walton,* 166 S.W.3d 95, 100 (Mo. App.2005).

There was evidence that defendant uttered a threat to kill Leiker when Leiker entered Ms. Gentry's house and argued with her—defendant was outside the trailer and shouted that he would kill Leiker if Leiker touched her. Although Ms.

**2.** Defendant tendered Instruction No. A, which was refused and placed in the court file. Instruction No. A was an MAI–CR 3d 306.06 instruction without the "initial aggressor language."

Williams said that Leiker fired a handgun pointed toward Ms. Gentry's backyard before Leiker got in his vehicle and started down the driveway, and that Leiker fired three shots over his left shoulder from his vehicle, there was no ammunition for the handgun or expended cartridges found in Leiker's vehicle or at the scene.

There was testimony that defendant fired at Leiker; that neighbors heard three or four shots fired that sounded as if they came from the same gun. Leiker was killed as a result of a shotgun pellet. Defendant admitted to having a shotgun of the type found in the woods where defendant had been.

■ Credibility of witnesses and the effects of conflicts or inconsistencies in testimony are questions for the jury to decide. *State v. Coleman*, 263 S.W.3d 680, 683 (Mo.App.2008). Whether to believe Ms. Williams' testimony was an issue for the jury. Whether Leiker fired shots from the handgun that was found in Leiker's vehicle was an issue for the jury to decide. If the jury did not believe that Leiker fired shots at defendant, the evidence was sufficient for the jury to find that defendant was the aggressor. This court finds no error in the giving of Instruction No. 14. Point I is denied.

■ Point II alleges that the trial court erred in refusing to permit defendant to present evidence that he "began sobbing when the news came on and he heard that Mr. Leiker had died." He contends that the exclusion of this evidence was an abuse of the trial court's discretion.

The matter to which Point II is directed arose at trial when defendant's trial attorney undertook to question Michael Merritt. Merritt told the trial court that defendant came to Merritt's house the night following the shooting; that defendant "was very distraught, tearful, and crying."

The state objected to the question contending that the testimony was hearsay. The objection was sustained after which the following offer of proof was made.

Q. Mr. Merritt, when [defendant] came back up to the house from the shop, the news came on?

A. Correct.

Q. And when the news came on, it said that the man had passed away?

A. Correct.

Q. When that happened, [defendant] started bawling?

A. Correct.

Q. He started crying?

A. Correct.

Q. He was very upset?

A. Yes.

The state argued that defendant's trial counsel was "offering what was said on the TV as being truthful to establish [defendant's] reaction to it. It's not just that it was said on TV. It's implying that it was true enough that he reacted to it." The trial court did not permit the testimony.

■ "A hearsay statement is any out-of-court statement that is used to prove the truth of the matter asserted and that depends on the veracity of the statement for its value." *State v. Kemp*, 212 S.W.3d 135, 146 (Mo.banc 2007). A statement not offered to prove the truth of what was asserted is not hearsay. *State v. Barnett*, 980 S.W.2d 297, 306 (Mo.banc 1998).

■ As this court perceives the record before it, the TV report to which defendant reacted was a report of the death of Mr. Leiker as a result of a gunshot wound. Arguably, the trial court erred in its determination that the proffered testimony was hearsay. An appellate court, however, does not review the propriety of a trial court's refusal to admit evidence only on the basis of whether it was error.

Its review is for prejudice. A trial court's ruling will be affirmed unless it was so prejudicial as to deprive a defendant of a fair trial. *State v. Destefano*, 211 S.W.3d 173, 178 (Mo.App.2007).

There was no issue at trial as to whether Leiker died. The TV report that his death had occurred was, for purposes of the contested issues at trial, of no consequence. Defendant, however, argues in this appeal that evidence of his remorse would have supported his claim that he acted in self-defense. This court's review of the record before it does not cause it to believe that the failure to admit the evidence reflected in defendant's offer of proof was prejudicial to defendant's claim of self-defense so as to have deprived defendant of a fair trial. Point II is denied.

■■■ Point III is directed to an attempt by defendant's trial counsel to adduce testimony that Ms. Gentry had been loaned a shotgun for protection against Leiker; that because the state had introduced evidence that there was a shotgun in Ms. Gentry's trailer, "which was not material to the elements of the offense charged," that defendant was "entitled under the doctrine of curative admissibility" to present evidence that the shotgun present in Gentry's trailer was for her protection against Leiker, not defendant.

A search of Gentry's trailer resulted in the discovery of a second shotgun. The officer who found the shotgun said Ms. Gentry told him that she got the shotgun from Bryan Daniel. Defendant's trial attorney sought to elicit testimony from Daniel that Daniel gave the shotgun to Gentry for protection against Leiker. The state objected. It claimed that the testimony was hearsay and was not relevant.

The state had the second shotgun admitted in evidence. Defendant argued at trial that since there was evidence that the second shotgun was in the trailer, he was entitled to show how it got there. The trial judge allowed the testimony that the shotgun was given to Ms. Gentry by Daniel for her protection, but did not allow testimony that the shotgun was given to Ms. Gentry for protection specifically from Leiker.

■■■ Point III invokes "the doctrine of curative admissibility" as its claim that the trial court erred in not permitting the testimony that the reason the second shotgun was in Gentry's residence was for protection from Leiker. "The doctrine of curative admissibility allows a party to introduce otherwise inadmissible evidence to answer the opposing party's previous introduction of inadmissible evidence if it would remove any unfair prejudice caused by the admission of the earlier inadmissible evidence." *United Missouri Bank, N.A. v. City of Grandview*, 179 S.W.3d 362, 368 (Mo.App.2005). However, in order to preserve a claim that the evidence was admissible on the grounds of curative admissibility, defendant was required to have asserted that grounds for its admissibility at trial. *Cook v. Coldwell Banker*, 967 S.W.2d 654, 659 (Mo.App.1998). "The burden is on the party who is offering the evidence to explain the theory of admissibility." *United Missouri Bank, supra*, at 369.

Defendant did not assert curative admissibility at trial as the grounds for admitting the evidence in question. Defendant did not preserve the grounds he now seeks to assert for appellate review. Point III is denied.

■■■ Point IV is directed to Instruction No. 5, the trial court's verdict director. Defendant contends Instruction No. 5 was erroneous in that it did not

cross-reference Instruction No. 14, the self-defense instruction. Defendant concedes, however, that no objection was made to the instruction at trial; that, therefore, the error he now claims was not preserved for appellate review.[3] Defendant requests plain error review.

 Plain error is error that results in manifest injustice or a miscarriage of justice if left uncorrected. *State v. Shoults*, 147 S.W.3d 163, 168 (Mo.App. 2004). *See* Rule 30.20. This occurs when the outcome of the trial would have been different but for the alleged error. *State v. Golden*, 221 S.W.3d 444, 447 (Mo.App. 2007).

The pattern instruction for self-defense is MAI–CR 3d 306.06. If a self-defense instruction is given, Note on Use 3 directs that the verdict director cross-reference the self-defense instruction. Notwithstanding the direction to cross-reference the self-defense instruction in the verdict director, failure to do so is reversible error only when the error is properly preserved. *State v. Hawkins*, 58 S.W.3d 12, 18 (Mo.App.2001).[4] "The absence from a verdict director of an explicit cross-reference to a separate defense instruction ... has not been viewed as plain error." *Id.*, citing *State v. Cooksey*, 805 S.W.2d 709, 710–11 (Mo.App.1991), and *State v. Dunlap*, 706 S.W.2d 272, 277 (Mo.App.1986). Under the facts in this case, this court finds no plain error as a result of Instruction No. 5 having not cross-referenced the self-defense instruction. Point IV is denied. The judgment is affirmed.

LYNCH, C.J., and BURRELL, P.J., concur.

---

**3.** "A defendant 'cannot stand idly by, permitting the giving of an erroneous instruction, and then benefit from his inaction.' " *State v. Cates*, 3 S.W.3d 369, 371 (Mo.App.1999), quoting *State v. Hill*, 970 S.W.2d 868, 872 (Mo.App.1998).

**4.** Defendant relies on three cases in his argument that the trial court's failure to cross-reference the self-defense instruction in the verdict director was error, *State v. Cook*, 727 S.W.2d 413 (Mo.App.1987); *State v. McClure*, 632 S.W.2d 314 (Mo.App.1982); and *State v. Foster*, 631 S.W.2d 672 (Mo.App.1982). The issue in those cases, however, was preserved for appellate review. Here the issue was not preserved.