**STATE of Missouri, Respondent,**

**v.**

**James ANTHONY, Appellant.**

**No. SD 29789.**

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 26, 2010.

---

Rosalynn Koch, Columbia, MO, for Appellant.

Chris Koster, Attorney General and John W. Grantham, Assistant Attorney General, Jefferson City, MO, for Respondent.

WILLIAM W. FRANCIS, JR., Judge.

A jury convicted James Anthony ("Appellant") of first degree assault in violation of section 565.050 [1] (Count I) and armed criminal action in violation of section 571.015 (Count II). Appellant was sentenced to twenty years' imprisonment on Count I and ten years' imprisonment on Count II to run concurrently. This appeal followed. We affirm the trial court's judgment.

### Factual and Procedural History

In the early morning hours of December 9, 2007, Brian Reeves ("Officer Reeves"), an off-duty Springfield Police Officer, and John Birmingham ("Mr. Birmingham"), property manager for Birmingham & Associates Property Management, were patrolling properties in downtown Springfield. At approximately 3:00 a.m., Officer Reeves and Mr. Birmingham heard a disturbance and saw two men arguing in

---

1. All references to statutes are to RSMo 2000, unless otherwise indicated.

front of a night club. One of the men, "John Doe," was described as tall, thin and younger than the other. The other man, Appellant, was described as short with a medium build and older than John Doe.

As Officer Reeves and Mr. Birmingham moved closer, someone from the crowd stepped between the two men breaking up the disturbance, and the men walked away from each other. A few moments later, both men turned around, walked back toward each other, and resumed arguing. Appellant began pushing John Doe with his chest and pinned him against the wall. The two men separated slightly before Officer Reeves and Mr. Birmingham heard a gunshot and saw a muzzle flash emanate from the direction of Appellant toward John Doe. John Doe jumped as if he was being shot at and ran away. Appellant chased him for eight to ten feet, then raised his gun and fired another shot.

After the first shot, Officer Reeves radioed for police assistance. When Appellant was apprehended by police, he told Officer Ringgold he shot at someone a couple times after being shot at first. Appellant also said he shot at the man's feet and the man was "all upon" his "girl" so he "took it outside."

Appellant was charged with first degree assault and armed criminal action.

During trial, Officer Reeves testified that following the first separation of the men, "the [Appellant] starts advancing on [John Doe] and uses his—I call it chest bumping. Physically touches his chest to the other person's and pushes him back up against the wall about right here." Officer Reeves noted that Appellant continued to push the victim until they separated slightly and it then appeared that Appellant shot in the direction of the victim. Officer Reeves also testified that after the victim "start[ed] to retreat or escape from the situation" the Appellant "started after"

John Doe and fired another shot as John Doe turned away and accelerated to a run.

Similarly, Mr. Birmingham testified "they physically got into it, and, you know, I would say that the [Appellant] pinned him up against that wall. So I think they clashed, and he, you know, physically moved him around the side and threw him up against the side of that building." He went on to testify that John Doe jumped like he was being shot at and ran from Appellant. Appellant chased John Doe approximately eight to ten feet and "extended one arm, and had a gun in that hand, and fired at the individual" running away. He stated that he did not see a gun in John Doe's hand as he was running away. On cross-examination, Mr. Birmingham testified that Appellant was being "antagonized" by John Doe during the initial verbal argument.

Officer Ringgold testified that while he was collecting biographical information following Appellant's arrest, Appellant stated he shot at someone a couple times after the individual shot at him first. This was the only evidence in the trial on the issue of self-defense.

During trial, at the jury instruction conference, the State offered Instruction 13, pursuant to Missouri Approved Instructions—Criminal, Third Edition ("MAI–CR 3d") 306.06:

> One of the issues in this case is whether the use of force by the defendant against John Doe was in self-defense. In this state, the use of force including the use of deadly force to protect oneself from harm is lawful in certain situations.
>
> A person can lawfully use force to protect himself against an unlawful attack. However, an initial aggressor, that is, one who first attacks or threatens to attack another, is not justified in using force to protect himself from the counterattack that he provoked.

A person who is the initial aggressor in an encounter can regain the privilege of using force in lawful self-defense if he withdraws from the original encounter and clearly indicates to the other person his desire to end the encounter. Then, if the other person persists in continuing the incident by threatening to use or by using force, the first person is no longer the initial aggressor, and he can then lawfully use force to protect himself.

In order for a person lawfully to use force in self-defense, he must reasonably believe he is in imminent danger of harm from the other person. He need not be in actual danger but he must have a reasonable belief that he is in such danger.

If he has such a belief, he is then permitted to use that amount of force that he reasonably believes to be necessary to protect himself.

But a person is not permitted to use deadly force, that is, force that he knows will create a substantial risk of causing death or serious physical injury, unless he reasonably believes he is in imminent danger of death or serious physical injury.

And, even then, a person may use deadly force only if he reasonably believes the use of such force is necessary to protect himself.

As used in this instruction, the term "reasonable belief" means a belief based on reasonable grounds, that is, grounds that could lead a reasonable person in the same situation to the same belief. This depends upon how the facts reasonably appeared. It does not depend upon

whether the belief turned out to be true or false.

On the issue of self-defense in this case, you are instructed as follows:

If the defendant was not the initial aggressor in the encounter with John Doe, or if he was the initial aggressor and clearly indicated to John Doe his withdrawal from the encounter,

and if the defendant reasonably believed he was in imminent danger of harm from the acts of John Doe and he used only such non-deadly force as reasonably appeared to him to be necessary to defend himself, then he acted in self-defense, or

if the defendant reasonably believed he was in imminent danger of death or serious physical injury from the acts of John Doe and he reasonably believed that the use of deadly force was necessary to defend himself, then his use of deadly force was in lawful self-defense.

The state has the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense. Unless you find beyond a reasonable doubt that the defendant did not act in lawful self-defense, you must find the defendant not guilty.

Instruction 13 included the initial aggressor language found in paragraph [1] of "Part A–General Instructions," MAI–CR 3d 306.06. Appellant's counsel tendered Instruction D as the self-defense instruction.[2] Instruction D is also based on MAI–CR 3d 306.06, but differed from Instruction 13 in that it did not include "initial aggressor" language and defined "serious physical injury." The trial court

---

2. Instruction D reads:

One of the issues as to Count I is whether the use of force by the defendant against John Doe was in self-defense. In this state, the use of force, including the use of deadly force, to protect oneself from harm is lawful in certain situations.

In order for a person lawfully to use force in self-defense, he must reasonably believe he is in imminent danger of harm from the other person. He need not be in actual danger but he must have a reasonable belief that he is in such danger.

rejected Appellant's self-defense Instruction D and instead submitted the State's tendered Instruction 13 on self-defense, over the objection of Appellant's counsel.

The jury convicted the Appellant on both counts. This appeal followed.

Appellant contends the trial court erred by: (1) including initial aggressor language in Instruction 13 since no evidence supported that Appellant was the initial aggressor; and (2) refusing to submit an instruction regarding Appellant's right to use deadly force to protect himself. The State contends there was no error because Instruction 13 complied with the MAI–CR 3d self-defense instruction, and evidence supported Appellant was the initial aggressor. The issues presented for determination here are:

1. Was sufficient evidence presented that Appellant was the initial aggressor?

2. Did the trial court properly instruct the jury on Appellant's right to use self-defense?

### Standard of Review

 The standard of review is disputed by the parties. Appellant submits that both issues should be reviewed *de novo*; whereas, the State contends the issues should be reviewed using an abuse of discretion standard.[3] The " '[s]ubmission or refusal to submit a tendered jury instruction is within the trial court's discretion.' " *State v. Davis*, 203 S.W.3d 796, 798 (Mo. App. W.D.2006) (quoting *State v. Smith*, 949 S.W.2d 901, 905 (Mo.App. S.D.1997)). This court's review is limited to whether the trial court abused its discretion in submitting or refusing the instruction. *Id.*; *State v. Ondo*, 232 S.W.3d 622 (Mo.App. S.D.2007). "An abuse of discretion occurs

If he has such a belief, he is then permitted to use that amount of force which he reasonably believes to be necessary to protect himself.

But a person is not permitted to use deadly force, that is, force which he knows will create a substantial risk of causing death or serious physical injury, unless he reasonably believes he is in imminent danger of death or serious physical injury.

And, even then, a person may use deadly force only if he reasonably believes the use of such force is necessary to protect himself.

As used in this instruction, the term "reasonable belief" means a belief based on reasonable grounds, that is, grounds which could lead a reasonable person in the same situation to the same belief. This depends upon how the facts reasonably appeared. It does not depend upon whether the belief turned out to be true or false.

On the issue of self-defense as to Count I, you are instructed as follows:

If the defendant reasonably believed he was in imminent danger of death or serious physical injury from the acts of John Doe and he reasonably believed that the use of deadly force was necessary to defend himself, then he acted in lawful self-defense.

The state has the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense. Unless you find beyond a reasonable doubt that the defendant did not act in lawful self-defense, you must find the defendant not guilty under Count I.

As used in this instruction, the term "serious physical injury" means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body.

3. Appellant relies on *State v. Huffman*, 711 S.W.2d 192, 193 (Mo.App. E.D.1986) for the proposition that *de novo* review is appropriate because "[w]hether the evidence requires the giving of a self-defense instruction is a question of law." However, Appellant misstates the issue. Here, the parties were in agreement that the evidence required that a self-defense instruction should be given. It is the giving of Instruction 13 instead of Instruction D that is at issue, not whether a self-defense instruction should be given.

if a ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a careful lack of consideration." *State v. Johnson,* 231 S.W.3d 870, 877 (Mo.App. S.D.2007). In reviewing the adequacy of jury instructions, we determine whether sufficient evidence existed for that instruction, viewing the evidence and inferences in the light most favorable to the instruction and disregarding any contrary evidence. *State v. Burns,* 292 S.W.3d 501, 505 (Mo.App. S.D.2009). "Further, this court will not reverse a conviction for mere error; the Appellant must demonstrate both the error and the prejudice arising from the error." *Davis,* 203 S.W.3d at 799.

### Analysis

▮ Appellant argues the trial court erred in including initial aggressor language in Instruction 13 because no evidence supported that Appellant was the initial aggressor since Officer Reeves and Mr. Birmingham did not see what transpired before Appellant and John Doe began arguing; therefore, the instruction misled the jury. The State contends the inclusion of initial aggressor language was not an abuse of discretion because substantial evidence demonstrated Appellant was the initial aggressor. Here, the issue is whether substantial evidence supported the inference that Appellant was the initial aggressor.

Rule 28.02(c)[4] provides "[w]henever there is an MAI–CR instruction or verdict form applicable under the law and Notes on Use, the MAI–CR instruction or verdict form shall be given or used to the exclusion of any other instruction or verdict form." MAI–CR 3d 306.06, Notes on Use 4(a) provides that the initial aggressor language should be used "[i]f there is evidence the defendant was the initial ag-

gressor," whereas, the initial aggressor language should not be used "[i]f there is no evidence indicating the defendant was the initial aggressor or provoked the incident. . . ."

▮ " 'It is axiomatic that instructions must be supported by substantial evidence and the reasonable inferences to be drawn therefrom.' " *Walton v. State,* 240 S.W.3d 783, 787 (Mo.App. S.D.2007) (quoting *Coday v. State,* 179 S.W.3d 343, 354 (Mo.App. S.D.2005)). "Substantial evidence is that which, if it is true, is probative and can constitute the basis for a jury verdict." *Sparkman v. Columbia Mut. Ins. Co.,* 271 S.W.3d 619, 624 (Mo.App. S.D.2008). " 'An initial aggressor is one who first attacks or threatens to attack another.' " *State v. Walton,* 166 S.W.3d 95, 100 (Mo.App. S.D. 2005) (quoting *State v. Hughes,* 84 S.W.3d 176, 179 (Mo.App. S.D.2002)). "The state need not present undisputed evidence that defendant was an initial aggressor in order to submit the issue to the jury. Conflicting evidence as to who was the initial aggressor presents an issue of fact for the jury to decide." *Id.*

The record shows substantial evidence was presented that Appellant was the initial aggressor. Both Officer Reeves and Mr. Birmingham testified that Appellant was the first to initiate physical contact with John Doe by pushing him against the wall following the verbal argument. Officer Reeves noted that Appellant continued to push the victim until they separated slightly and it appeared that Appellant shot in the direction of the victim. Mr. Birmingham testified John Doe jumped like he was being shot at and ran from Appellant. Both witnesses testified that Appellant chased John Doe and again shot at him as he was running away. Mr. Birmingham did not see a gun in John Doe's hand as he was running away. The

---

**4.** All rule references are to Missouri Court Rules (2010).

testimony of either Officer Reeves or Mr. Birmingham constitutes substantial evidence for a jury to conclude Appellant was the initial aggressor.

Although some evidence was presented that John Doe could have been the initial aggressor, the jury was not required to accept this evidence as credible and even if the jury accepted the evidence as credible, it did not necessarily negate evidence Appellant was the initial aggressor.[5] There was evidence from which the jury could find Appellant was the first to physically attack or threaten to attack; and therefore, Appellant was the initial aggressor in the incident that led to the shooting. Conflicting evidence as to who was the initial aggressor presents a question of fact for the jury to decide. *Hughes*, 84 S.W.3d at 179. The evidence as to the initial aggressor viewed in the light most favorable to the instruction, supports a reasonable inference that Appellant was the first aggressor. There is no showing that the trial court's instruction on initial aggressor was against the logic of the circumstances and so unreasonable as to indicate a lack of careful consideration. We find sufficient evidence supported the conclusion that Appellant was the initial aggressor. This point is denied.

 Appellant also argues the trial court erred in failing to instruct the jury on Appellant's right to use deadly force.[6]

However, the State correctly contends that the trial court instructed the jury in Instruction 13 on the right to use deadly force. Appellant is correct that the trial court "has an obligation to submit a self-defense instruction if the issue is supported by the evidence, when viewed in the light most favorable to the defendant." *State v. Weems,* 840 S.W.2d 222, 226 (Mo. banc 1992). However, pursuant to Rule 28.02, MAI–CR 3d 306.06 is the mandatory instruction to be given when instructing on self-defense. *State v. Beck,* 167 S.W.3d 767, 779 (Mo.App. W.D.2005). Thus, Appellant's contention fails because the trial court instructed the jury on the right to self-defense in Instruction 13, patterned after MAI–CR 3d 306.06. That instruction includes a statement of the law on when an individual has a right to use deadly force. Since Appellant makes no additional argument that Instruction 13 was contrary to substantive law, we find the trial court properly instructed the jury on the lawful use of deadly force. Accordingly, this point is denied.

The trial court's judgment is affirmed.

RAHMEYER, P.J., and BATES, J., concur.

---

5. Evidence that could suggest John Doe first attacked includes Officer Ringgold's testimony that Appellant stated John Doe first shot at him. This was contradicted by Officer Reeves and Mr. Birmingham's testimonies that only Appellant fired a weapon. Also, the Appellant points to Mr. Birmingham's statement that John Doe "antagonized" Appellant as evidence that John Doe first attacked; however, if accurate, there is no evidence that it even rose to the level of an attack, or a threat of attack, and it would not conclusively negate Appellant as the initial aggressor. Finally, the Appellant argues that the main witnesses did not see the fight from the beginning and

thus, there was no evidence that Appellant was the initial aggressor. Again, it is not a question of witnessing the start of the "fight"; rather, the jury could have determined that the first act of violence or threat of violence occurred when Appellant pushed John Doe against the wall.

6. Appellant does not allege Instruction 13 was contrary to substantive law; rather, he contends that the jury was simply not instructed on the right to use deadly force even though he asserted self-defense and the evidence supported such an instruction.